[No. 10,513.—Department One.]

# THE PEOPLE *v.* WIRT TRAVIS.

Manslaughter—Self-defense— Evidence of Threats by Deceased.—In capital cases, past threats and hostile actions, or antecedent circumstances tending to show malice on the part of deceased, are admissible in connection with the homicide, for the purpose of showing apprehensions of personal danger from the deceased, and of illustrating the question, which of the parties in a sudden quarrel in which human life has been taken may have been the assailant, but not otherwise.

Id.—Id.—Instructions.—Upon the trial of an indictment for manslaughter, it appeared that the defendant's brother struck the deceased, and the latter (as was claimed by the defendant) drew a pistol and aimed it at the assailant, and thereupon the defendant shot and killed the deceased in defense of his brother; *held,* if the circumstances were sufficient to justify the deceased in the belief that his life was in danger from the sudden assault made upon him, he had a right to defend himself against it, even to the extent of taking the life of his assailant, if necessary; and that any one who killed him while so engaged in the performance of a lawful act would not be guiltless of his death; *held,* accordingly, that instructions to this effect, given by the Court (and cited in the opinion), were correct.

Appeal from an order denying a new trial, in the Superior Court of Sonoma County. Temple, J.

*Porter & Rutledge,* and *Alex. Campbell,* for Appellant.

The *Attorney-General,* for Respondent.

McKee, J.:

The defendant was convicted of the crime of manslaughter, for the unlawful killing of A. G. Hill; and he appeals from the judgment, and an order overruling a motion for a new trial.

In the course of the trial, one Emerson, a witness for the defendant, gave the following testimony: "I had a conversation with Hill, the deceased, in relation to the Travises—Georgia, Wirt, and John. It was in Petaluma, about the last of May or the 1st of June, 1878. Hill said the first thing he would do with them boys, he would commence killing them, if he got in a row with them." At this point in his testimony, the witness was asked, "What did you say to him?" and he answered, "I warned him of his danger." The prosecution objected, and the defendant's counsel then offered to prove by the witness, that the deceased stated to him that Georgia Travis, the sister of the defendant, was a loose character, and that he himself had sexual intercourse with her; and that the witness had told the deceased when he made the threat already testified to, that he would not be safe to say that, if the brothers should hear of it. Objection was made to the offer, on the ground that the testimony was irrelevant and immaterial. The objection was sustained. Defendant excepted, and the ruling is assigned as error. Without objection, the witness further continued to testify, that, at the conversation, deceased pulled a pistol half-way out of his pocket, and said he was a little hell himself. Of this, he, the witness, had told about fifty or sixty people, but did not tell the Travises.

It was shown by the evidence in the case that Georgia Travis, the person named in the offer, and her brother, the defendant, had been at a meeting of the Blue Ribbon Club, at its hall in the town of Forestville, on the evening of the 8th of November, 1879. While they were seated there, Hill, the deceased, came in and seated himself near them. Upon observing him, Miss Travis rose from her seat and went out of the hall. The defend-

ant also arose and followed her, and when outside, he asked her to return to her seat in the hall.   She refused to return, saying, " that Hill had slandered her, and tried to scandalize her, and she wouldn't remain in his society."   Defendant, observing that his brother, John Travis, was near at hand, went and told him that their sister had left the hall because Hill was there, and asked him to go home with her.   The latter refused, saying that he was going to the Blue Ribbon himself.   The sister went home unattended by either.   The defendant then returned to the hall, closely followed by his brother.   Both advanced to positions near where Hill was sitting—the defendant taking a seat about eight or ten feet from Hill, and his brother going to a chair nearly in front of Hill.   When about to sit down, the brother suddenly reached over the head of a man who was seated between Hill and himself, and struck Hill a blow on the head with his fist, because, as he claimed, Hill made a face åt him as he was about sitting down.   Hill, on being struck, rose to his feet, facing John Travis, leaving the defendant at his back; and it is claimed that he drew, as he rose, a pistol, and moving backward a few steps in the direction where the defendant was, aimed it at John Travis.   As soon as Hill rose, the defendant also sprang to his feet, revolver in hand, and advancing a step or two toward Hill, put his revolver within five or six inches of the back of Hill's head, fired, and shot Hill fatally, while he was in the act, as the defendant claimed, of shooting at or attempting to shoot his brother.

Such being the circumstances of the killing, it is contended that the Court erred in rejecting the offer.

In capital cases, past threats and hostile actions, or antecedent circumstances tending to show malice, are admissible, in connection with the homicide, for the purpose of showing apprehensions of personal danger from the deceased, and of illustrating the question, which of the parties in a sudden rencounter or quarrel, in which human life has been taken, may have been the assailant.

In the present case, the threats to which the deceased gave expression, on the occasion referred to by the witness, were all admitted in evidence.   The defendant, therefore, had the benefit of all that there was in the conversation tending to show per-

sonal hostility on the part of the deceased against him or his brother. That part of the conversation referred to in the offer, and which was excluded from the jury, did not concern the defendant or his brother, and did not tend to show malice towards either of them. At the utmost, it was but a reckless expression of opinion concerning the character and conduct of the sister, which, so far as appears by the testimony, was unknown to the brothers; and however reckless and unwarranted it may have been, whether it was founded in truth or in falshood, it could not have influenced their action on the occasion of the homicide; and it was not in itself, or in connection with the facts and circumstances attending the killing, a circumstance from which the jury might have inferred the existence of hostile feelings on the part of the deceased against them, or from which they might have drawn the inference that the conduct of the deceased against John Travis on the night of the killing was to be ascribed to personal hatred of the defendant or his brother, which was calculated to excite or arouse the apprehensions of the defendant as to his own or his brother's safety. There was, therefore, no error in rejecting the offer.

The next assignment of error is, that the Court erred in giving to the jury the following instructions, at the request of the District Attorney, to wit: "I charge you in plain terms, that no man by his own lawless acts can create a necessity for acting in self-defense, and then, upon killing the person with whom he seeks the difficulty, interpose the plea of self-defense; and this law applies to any one killing the assailed to protect the original assailant, as to the original assailant."

The instruction embodies a familiar principle of criminal law, that a man cannot, in any case, justify killing another by a pretense of necessity, unless he were wholly without fault in bringing about that necessity. If it were true that John Travis attacked the deceased, and that the defendant acted in concert with him, or knew that the attack was to be made, and aided and abetted it, neither the defendant nor his brother would be justifiable for taking the life of the deceased; for when a person has by his own lawless act brought upon himself the necessity to commit a crime, he cannot shield himself by the plea of necessity from immunity from punishment for the crime com-

mitted. The plea of necessity is a shield for those only who are without fault in occasioning it and in acting under it. There was, therefore, no error in giving the instruction to the jury.

The last assignment of error is, that the Court erred in refusing to give to the jury, at the request of the defendant, the following instruction, namely : " A slight battery does not justify retaliation by the use of a deadly weapon for the purpose of inflicting upon the assailant serious bodily injury. In order to justify the use of a deadly weapon by the party assailed, the battery must be of such a character as to inflict upon the person beaten serious bodily injury, or at least to put him in peril of receiving it at the hands of his assailant. Therefore, if there was no previous concert of action between Wirt and John Travis, and the latter beat Hill, but not to such an extent as to inflict upon him serious bodily injury, or subject him to imminent danger thereof, and Hill then drew a deadly weapon, with intent to kill or inflict therewith upon John Travis serious bodily injury, and there was, or reasonably appeared to be, imminent danger of Hill's design being accomplished, and solely to prevent its accomplishment the defendant shot and killed Hill, the jury should acquit the defendant." This instruction was modified, against the objection and exception of the defendant, by inserting, after the words " imminent danger thereof," the words " and the circumstances were not such as to justify Hill in the belief that such danger existed." And thus modified, the instruction was given to the jury.

It is manifest from the circumstances of the killing, as given in evidence, that John Travis was the assailant in the rencounter in which Hill was slain. The sudden assault made upon Hill caused him to move backward a few steps, in the direction of the defendant's position, in a hostile attitude toward his assailant. This assault upon Hill, or the backward movement of Hill, or both combined, caused the defendant to resort to his revolver, and to rise to his feet and advance upon Hill for one· of two purposes ; namely, either to aid and abet his brother in the assault upon Hill, or to defend the life or limb of his brother from the theatening and impending danger from Hill's pistol. If the former, the defendant would not be guiltless in causing Hill's death; if the latter, he was exercising a legal

right, if the circumstances under which he acted justified him in exercising the right. What those circumstances were, was a matter for the consideration of the jury; upon them, Hill and defendant acted; and out of them, their respective rights and duties as actors arose. It was, therefore, proper for the Court to instruct the jury, that they had to pass upon the conduct of Hill and the defendant with reference to the circumstances under which they both acted. That was, in effect, the import of the modification which the Court made to the instruction asked by the defendant. The instruction, as modified, told the jury substantially, that if Hill, when he was assaulted by John Travis, drew a deadly weapon upon him, with the intention of killing him, or doing him some great bodily harm, for an assault which had done no serious injury upon the person of Hill, nor subjected him to imminent danger thereof, and the circumstances of which were not such as to justify him in the belief that such danger existed, then the defendant was justified in preventing the accomplishment of Hill's design, by shooting Hill, if that was necessary to prevent him from executing his design; provided there was, or appeared to the defendant to be, imminent danger to the life or limb of his brother from the hostile and threatening attitude of Hill.

This we think was correct. The jury were not misdirected to the prejudice of the defendant. There is no doubt that a man has a legal right to defend himself against the sudden and unexpected assault by another; but if the assault does not seriously injure him, nor contain in itself circumstances of imminent danger of injury to him, and the circumstances in which he is placed by it are sufficient to justify him in the belief that such danger exists, he has no right to take advantage of the opportunity which such an assault gives him, to slay his assailant. If Hill attempted to do so under such circumstances, the defendant had a legal right to interfere to prevent it. The law makes it the duty of every one who sees a felony attempted by violence to prevent it if possible; and allows him to use the necessary means to make his resistance effectual.

If, on the other hand, the circumstances were in themselves sufficient to justify Hill in the belief that his life was in danger from the sudden assault made upon him, he had the right to de-

fend himself against it, even to the extent of taking the life of his assailant, if necessary; and any one who killed him, while so engaged in the performance of a lawful act, would not be guiltless in his death.

It is urged, that the modification prejudiced the defendant, because it made the question of his guilt or innocence depend upon the circumstances as they appeared to Hill, and not as they appeared to the defendant. But both Hill and the defendant acted simultaneously, and upon the same circumstances; and it was for the jury to determine whether the action of the one or the other, under the circumstances of danger, apparent or real, in which they acted, was lawful or unlawful.

Judgment and order affirmed.

ROSS, J., and McKINSTRY, J., concurred.