[No. 10,780.—In Bank.]
December 29, 1882.

## THE PEOPLE *v*. ISAAC TAMKIN.

MURDER—JUSTIFICATION—THREATS.—Threats made by the deceased against a defendant charged with homicide are admissible for the purpose of illustrating or determining the question as to who was the assailant in the fatal encounter, and are also admissible when they have been communicated to the defendant, for the purpose of determining whether the threats, in connection with the other facts and circumstances of the case, were sufficient to excite reasonable fears in the mind of the defendant. The previous threats alone, however, unless coupled at the time with an apparent design then and there to carry them into effect, will not justify a deadly assault by the other party. There must be such a demonstration of an immediate intention to execute the threat as to induce a reasonable belief that the party threatened will lose his life or suffer serious bodily injury unless he immediately defends himself against the attack of his adversary.

ID.—ID.—ID.—On a trial for murder the facts of the homicide were thus stated by one witness, whose testimony was substantially corroborated by the others: "Tamkin (the defendant) and I were walking down the street, when McClellan (the deceased) hailed Tamkin from behind; we turned around and McClellan stood there, facing us; he said to Tamkin, 'I suppose you are as well heeled as you were last night;' Tamkin replied, 'I am not heeled;' McClellan then said, 'Go and heel yourself, for I am fixed;' Tamkin said, 'Where shall I go to get fixed?' McClellan said, 'Go where you d——d please, it makes no difference to me; what did you

do to me last night?' Tamkin said, 'I really don't know;' McClellan raised his hat and showed a scar, and said, 'That is what you did, you d——d son of a ——;' Tamkin replied, 'I am very sorry for it;' McClellan said, 'Yes, I guess you are; I can lick you any place in the world, you d——d son of a ——, go and heel yourself; I don't want to take any advantage of you;' he turned and walked away, I should judge, fifteen feet from Tamkin, when Tamkin drew a pistol from his right-hand pocket and said, 'Yes, I am heeled, you d——d son of a ——; what do you want?' and fired his pistol." Other shots were fired by both parties; but the evidence shows that it was the first shot that inflicted the mortal wound.

*Held:* There is no principle of the law that will justify a homicide committed under such circumstances.

ID.—ID.—The Court instructed the jury: "If the killing was intentional it was unlawful, and there was no justification, unless the killing was in necessary self-defense, as defined in these instructions."

*Held :* The Court elsewhere correctly charged the jury upon the law of self-defense, and, taking the charge as a whole, the law upon this branch of the case was correctly given, conceding (which is not conceded) that the evidence tended to make out a case of self-defense or justifiable homicide.

ID.—ID.—THREATS.—The Court instructed the jury: "If the question as to who commenced or brought on the conflict in which the deceased lost his life is in doubt, threats made by the deceased against the defendant are admitted in evidence *solely* to enable the jury to determine as to who was the aggressor in the fatal encounter."

*Held :* The objection as to the word "solely" in the foregoing instruction, admitting that the instruction in a proper case should not contain such a limitation, the evidence having failed to show a case of self-defense, no injury could have resulted to the defendant from the instruction as given.

ID.—ID.—INSULTING LANGUAGE.—The Court refused to permit the defendant to ask a witness the question, if such language as was used by the deceased to the defendant the night before the homicide "was not considered fighting language at Truckee?" *Held:* The objection was properly sustained.

APPEAL from a judgment of conviction, and from an order denying a new trial in the Superior Court of Nevada County. CALDWELL, J.

*Dibble & Kitts* and *C. W. Cross,* for Appellant.

*A. L. Hart,* Attorney General, for Respondent.

MORRISON, C. J.:

The defendant was prosecuted by information for the crime of murder, and was convicted of manslaughter. The facts disclosed by the evidence in the case clearly establish the killing, and the only defense relied upon is that of justifica-

tion. A difficulty occurred between the defendant and the deceased the night before the homicide, in the course of which the deceased received a severe blow on the head from a pistol in the hands of the defendant, and from that time down to a few seconds before the shooting the deceased, at short intervals, uttered threats against the life of the defendant, at the same time using violent language and opprobrious epithets respecting him.

We have no doubt of the correctness of the position taken by the learned counsel for the defense, that threats are admissible for the purpose of illustrating or determining the question as to who was the assailant in the fatal encounter, and that they are also admissible when they have been communicated to the defendant, for the purpose of determining whether the threats, in connection with the other facts and circumstances of the case, were sufficient to excite reasonable fears in the mind of the defendant. "A person whose life has been threatened by another whom he knows or has reason to believe has armed himself with a deadly weapon for the avowed purpose of taking his life or inflicting a great personal injury upon him, may reasonably infer, when a hostile meeting occurs, that his adversary intends to carry his threats into execution. The previous threats alone, however, unless coupled at the time with an apparent design then and there to carry them into effect, will not justify a deadly assault by the other party. There must be such a demonstration of an immediate intention to execute the threat as to induce a reasonable belief that the party threatened will lose his life or suffer serious bodily injury unless he immediately defends himself against the attack of his adversary." (*People* v. *Scoggins*, 37 Cal. 683; see also *People* v. *Travis*, 56 id. 251; *Stokes* v. *The People*, 53 N. Y. 174.)

We will now examine the evidence for the purpose of determining how far the principles above stated apply to the present case. That the deceased threatened to kill the defendant, that he armed himself with the avowed purpose of carrying such threats into execution, and that all these matters were fully communicated to the defendant, clearly appears from the evidence. But the next inquiry is, whether the conduct of the deceased was such, at the time of the

shooting, as to justify or excuse the killing. Did the circumstances occurring at the time of the homicide show an apparent design, on the part of the deceased, to carry his threats into execution? Was there any demonstration made by the deceased showing an immediate intention to execute the threats? Was there any ground for a reasonable belief that the party threatened was about to lose his life, or to suffer serious bodily injury, unless he immediately defended himself against the attack of his adversary? The following is, in substance, the evidence touching upon the matter: The witness ¡Lovern says: "Tamkin and I were walking down street, when McClellan (the deceased) hailed Tamkin from behind. We turned around, and McClellan stood there facing us. He said to Tamkin, 'I suppose you are as well heeled as you were last night?' Tamkin replied, 'I am not heeled.' McClellan then said, 'Go and heel yourself, for I am fixed.' Tamkin said, 'Where shall I go to get fixed?' McClellan said, 'Go where you d——d please, it makes no difference to me.' 'What did you do to me last night?' Tamkin said 'I really don't know.' McClellan raised his hat, showed a scar, and said, 'That is what you did, you d——d son of a ——.' Tamkin replied, 'I am very sorry for it.' McClellan said, 'Yes, I guess you are; I can lick you any place in the world, you d——n, etc.; go and heel yourself; I don't want to take any advantage of you.' He turned and walked away, I should judge fifteen feet from Tamkin, when Tamkin drew a pistol from his right-hand pocket and said, 'Yes, I am heeled, you d——n son of a ——; what do you want?' and fired his pistol. McClellan partly stooped, drew his pistol from his right-hand coat pocket as he stooped, staggered, and fired a shot at Tamkin." Other shots were fired by both parties, but the evidence shows that it was the first shot that inflicted the mortal wound upon the body of McClellan. The ball penetrated the side of McClellan, and the shot was fired before the deceased had turned his face to the defendant. Several witnesses gave an account of the circumstances attending the shooting, and although differing somewhat in some of the minor and unimportant details of the homicide, there is, upon the important and substantial facts, no material difference. It is but natural that several persons, wit-

nessing such an occurrence, should differ somewhat in the details of the transaction; and nothing more than a natural discrepancy is found in the evidence in this case.

The witness Jaques testified that "McClellan said: 'I won't take any advantage of you, but you go and heel yourself,' and then turned square around and started to walk away." There is no conflicting evidence upon the point, that, after the hostile demonstration was made by McClellan, he declared his unwillingness to take any advantage of an unarmed man, such as he believed the defendant to be, and then turned his back upon the defendant and began to walk away. It was while the deceased was in this position with reference to the defendant, with his back to him, and in the act of walking away from him, that the defendant drew his pistol and almost immediately thereafter discharged it, with fatal effect, upon the person of deceased. Will the law justify or excuse him under such a state of facts? We think not. The defendant was in no immediate danger at the time, and there was no necessity, real or apparent, for the deadly assault. The deceased could easily have executed his threat, if it was really his intention to take the life of the defendant; but after the defendant had falsely stated to him that he was unarmed, and, after all present and immediate danger had passed, the deceased having turned around to move away, the defendant drew his pistol and fired the fatal shot. We are not familiar with any principle of law that would justify a homicide committed under such circumstances. (See *People* v. *Campbell*, 8 P. C. L. J. 293, and authorities therein cited.)

2. The next point made on behalf of the defendant is that the Court erroneously charged the jury as follows: "If the killing was intentional it was unlawful, and there was no justification unless the killing was in necessary self-defense, as defined in these instructions." The Court correctly charged the jury upon the law of self-defense, and, taking the charge as a whole, the law upon this branch of the case was correctly given to the jury, conceding (which we do not) that the evidence tended to make out a case of self-defense or justifiable homicide.

3. The Court also instructed the jury as follows: "If the question as to who commenced or brought on the conflict in

which the deceased lost his life is in doubt, threats made by the deceased against the defendant are admitted in evidence *solely* to enable the jury to determine as to who was the aggressor in the fatal encounter." The objection is to the word "solely" in the foregoing instruction; and it may be that the instruction in a proper case should not contain such a limitation. But having held that the evidence failed to establish a case of self-defense, no injury could have resulted to the defendant from the instruction as given.

4. Witnesses were asked if such language as was used by the deceased to the defendant the night before the homicide "was not considered fighting language at Truckee?" The question was objected to, and the objection was sustained by the Court. It is sufficient to say that in the eye of the law, insulting language is no excuse for a deadly assault, and this is so, even at "Truckee."

After a review of the whole case, we find no error in the proceedings sufficient to warrant a reversal of the judgment. The law was given to the jury as favorably for the defendant as the circumstances of the case warranted, and the erroneous rulings, if any there were, did not injure the defendant in any of his substantial rights.

Judgment and order affirmed.

ROSS, MYRICK, McKEE, and THORNTON, JJ., concurred.