[Crim. No. 1278. In Bank.—January 29, 1906.]

## THE PEOPLE, Respondent, v. CHARLES H. LAMAR, Appellant.

CRIMINAL LAW — HOMICIDE — SELF-DEFENSE — APPARENT PERIL — EVIDENCE—REPUTATION OF DECEASED AS DANGEROUS WHEN INTOXICATED—FOUNDATION.—Where a defendant charged with murder pleaded self-defense, and the evidence left it in doubt whether deceased was not the aggressor, and whether defendant was not warranted in believing himself in apparent peril of bodily harm from deceased while intoxicated, to defendant's knowledge, who also knew, and from long acquaintance with the habits of deceased, which were matter of public notoriety in the place where deceased was killed, was presumed to know, whether deceased was dangerous

when intoxicated, a sufficient foundation was laid for proof that defendant was reputed to be violent, quarrelsome, and dangerous when intoxicated, and it was error to disallow such evidence.

ID. — UNCOMMUNICATED EVIDENCE OF REPUTATION — QUESTION AS TO FIRST ASSAILANT.—The rule should be that, whenever the circumstances are such that evidence of uncommunicated threats made by the deceased is admissible, evidence of the reputation of the deceased as being a quarrelsome, violent, and dangerous man, though uncommunicated to the defendant, is also admissible, the consideration of the jury to be limited in such case to the question solely as to who was the first assailant in the fatal encounter.

ID.—CROSS-EXAMINATION—DEFENDANT NOT PRECLUDED BY EVIDENCE OF GOOD REPUTATION.—Where on cross-examination of a witness for the prosecution by defendant's counsel the witness had testified that the general reputation of the deceased for peace and quiet in the community where he lived was good, the defendant was not thereby precluded from showing by the same witness on further cross-examination that such reputation was not the same under all circumstances, and that deceased was reputed to be violent and dangerous when intoxicated.

ID.—DEPOSITION AT PRELIMINARY EXAMINATION—OBJECTION TOO GENERAL.—An objection that no proper foundation had been laid for the admission in evidence of a deposition of a witness taken at the preliminary examination, who was absent from the state at the time of the trial, was too general. Counsel should have specified the particular deficiency in the proof which was claimed to exist.

APPEAL from a judgment of the Superior Court of Kern County and from an order denying a new trial. Paul W. Bennett, Judge.

The facts are stated in the opinion of the court.

Smith & Allen, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, for Respondent.

LORIGAN, J.—The justices of the district court of appeal for the second district, before whom this appeal was originally pending, being unable to agree on a judgment therein, the matter has been transferred to this court for disposition. The defendant was prosecuted for murder, convicted of manslaughter, and sentenced to imprisonment in the state prison for a term of ten years. Upon the trial the killing

by defendant was admitted, and he sought to justify it on the ground that it was done in necessary self-defense. Upon this appeal defendant presents several grounds for a reversal, only one of which, we think, requires discussion, and in order that this point may be clearly understood it will be necessary to give a general outline of the evidence in the case as it stood when it is claimed the trial court committed error in rejecting testimony offered on behalf of defendant.

The defendant and the deceased, Tom Delaney, were both young men residing at Mojave, Kern County. Delaney was a barkeeper in one of the saloons of that town, and the defendant had occasionally tended bar in the same locality, though not so employed at the time of the homicide. They had been acquainted with each other for some time, and met frequently about the various saloons in Mojave, to which both were in the habit of resorting. For some two months prior to the homicide ill-feeling had existed between them, springing from an altercation in the saloon where defendant was then employed, during which Delaney had fired a shot at him, for which defendant had had him arrested and prosecuted. The killing of Delaney occurred in a house of ill-fame in the town of Mojave, a little after three o'clock in the morning of the 29th of January, 1904. It appears that both the defendant and deceased were familiar with this house and with its inmates. About two o'clock that morning defendant and Rose Givens, one of the inmates of the place, had retired to her room in the house for the night. Shortly before three o'clock Delaney, with several companions, visited the house. A little while after his arrival, Delaney left the room in which he and his companions and the mistress of the house were, for the declared purpose of calling some of the women from their rooms to join them in a drink. As to what subsequently occurred, the evidence is in radical conflict. Two of Delaney's companions, who followed him from the room, testified that when he went out into the hallway the first room he came to was that occupied by defendant and Rose Givens, and that he rapped on the door, called her by name, and said he wanted to see her. She declined to open the door or see him, saying she would see him in the morning. He insisted, however, on seeing her then—for what purpose he did not declare. After some parleying she at last con-

sented to open the door, and immediately some one was heard to approach it from the inside and apparently endeavor to open it. At that moment Delaney, who had his hand on the knob, shook the door and it opened. As it did, shooting commenced from the inside and Delaney fell to the floor inside the room just as the Givens woman rushed screaming past him into the hall. These witnesses testified that only three shots were fired, all by defendant in rapid succession; that there was no light in the room occupied by defendant and the woman, but a lantern in the hallway was lighted; that by it they could distinctly see Delaney as he stood at the door waiting for it to be opened, and that he had no weapon in his hand; that immediately after the shooting defendant hurried from the house, pistol in hand, attired only in his pantaloons; that they went into the room where Delaney had fallen and found him breathing, but apparently unconscious, and he soon expired. He had received three wounds, a fatal one through the heart. They testified that no weapon was found on Delaney's person or in the room where he had fallen. This was the testimony on the part of the prosecution as to the immediate circumstances attending the killing.

The testimony on the part of the defense as to what occurred at the time of the homicide consisted of the testimony of Rose Givens and the defendant. The woman testified that when Delaney came to the door and knocked he called out that he wanted to come in—that he wanted to see her; that she told him he could not do so, as she had company, but that she would see him in the morning; that he insisted on coming in and seeing her then, and upon her still refusing to open the door or see him he declared that if she did not he would kick the door in; that when he declared this intention she answered that she would come out into the hall and talk to him, and got out of bed for that purpose; that as she approached the door and had almost reached it, Delaney kicked it open with such force that it struck her in the head, staggering her back into the room, that when she recovered herself she ran out of the room past Delaney, who was standing in the hallway opposite the doorway with two others, and into the street; that when she reached the street, some forty feet from the building, she heard the shooting.

The testimony of the defendant as to what occurred up to the time Rose Givens ran out of the room coincided with her testimony as to those occurrences. He testified further that when Delaney came to the door and asked that it be opened he recognized his voice, got out of bed and put on his pants, and took a position at the foot of the bed, where he was standing with his pistol in hand when Delaney kicked open the door; that after Rose Givens rushed out Delaney walked into the room towards the defendant, saying, "You son of a bitch, what are you going to do now?" that as he spoke, Delaney drew his pistol, and each fired almost simultaneously; that as they fired the door swung around so as to leave them in the dark; that they then grappled with each other, and during the struggle two or three more shots were fired, one by Delaney; that in the struggle they fell to the floor, and while down the defendant pressed his pistol against Delaney's body and fired again; that upon this shot, as Delaney immediately ceased struggling, defendant arose from the floor and left the house. He had received no injury in the contest.

In addition to this evidence on both sides as to the circumstances immediately attending the killing of deceased, there was evidence in the case of other facts; that defendant had on several occasions, even on the evening of the homicide, declared his intention of killing Delaney; and there was evidence from which the jury might also have found that Delaney on the same evening had expressed a similar intention toward defendant. There was also evidence from which the jury might have reasonably inferred that Delaney knew, or had strong reasons to believe, that the defendant and Rose Givens were together in her room when he approached it. As to the possession by Delaney of a pistol when he came to the house, there was evidence showing that he had one at eleven o'clock that night, and nothing to show that he had laid it aside before his appearance at the door of the room where he lost his life, and there was evidence in the case to the effect that one of the men who had accompanied Delaney to the scene of the tragedy, and who testified on the trial, had stated, upon the day of the shooting, that when he entered the room where the killing took place, immediately after the defendant left, he found Delaney's pistol on the floor of the

room and had secreted it. It further appeared from the
evidence that Delaney had spent the night, from eight o'clock
in the evening until he went to this house of ill-fame, at about
three o'clock in the morning, visiting various saloons in
different parts of the town of Mojave and drinking therein,
and that defendant, who had spent the earlier part of the night
on which the homicide occurred in a saloon and dance-hall
in company with Rose Givens and others of her class, into
which saloon Delaney came during the night, knew that he
was drinking. As indicating the extent to which Delaney
was drinking, one of his companions, who was with him all
that night up to the time of his death, testified: ''We did
not visit any place except saloons that evening or night. We
both had money and treated quite often. We spent the entire
evening going about from saloon to saloon, having frequent
drinks and a general good time. It was rather a convivial
evening.'' It was also shown that on the night of the homi-
cide, and some three hours prior to it, defendant was several
times warned against remaining in the presence of, or meet-
ing, Delaney, as he was drinking; that if he did trouble
would probably ensue, a warning which defendant heeded
by immediately leaving the saloon and dance-hall where De-
laney was drinking and repairing with Rose Givens to her
room.

The foregoing constitutes all the evidence adduced at the
time (and was practically all the evidence in the case) when
the defendant sought to introduce the testimony which the
court struck out or refused to admit, and the rulings con-
cerning which present the principal assignments of error that
we shall now consider. That testimony was with reference
to the general reputation of the deceased in Mojave for peace
and quiet. One J. H. Underhill, having qualified himself to
speak on the subject, on inquiry as to the reputation of the
deceased for those traits, stated that it was good. He was
then asked if this was true of deceased under all circum-
stances, and replied that it was not. He was asked to explain
what he meant by that answer, but under objection of the
prosecution, sustained by the court, he was not permitted
to do so, and the answer of the witness that under all cir-
cumstances his reputation for these traits was not good, was,
on motion, and on the ground that the answer was irrelevant,

immaterial, and incompetent, stricken out; the defendant excepting to the ruling. In granting the motion the reason assigned by the court for granting it is contained in its declaration made at the time. The court said: "I do not think you had a right to an answer to the question at all after he answered that his reputation was good. I think you should stop right there. The motion is granted. Let it be stricken out." Upon further discussion between the court and counsel for defendant, the court held that the answer of the witness that the reputation of deceased for peace and quiet in Mojave was good utterly precluded defendant from asking the witness any further questions in the line that he was pursuing on the subject of that reputation. Notwithstanding the view expressed by the court, counsel for defendant further asked the witness (indicating by the inquiry the circumstances under which he was endeavoring to show that the reputation of deceased for peace and quiet was not good) whether he knew the reputation of deceased in the town of Mojave for peace and quiet when he was drunk; but on objection of the prosecution that no proper foundation had been laid for this inquiry, and on the further ground that the question was irrelevant, immaterial, and incompetent, the objection was sustained. The error complained of is predicated on these rulings.

While it is insisted by respondent that the defendant, under the circumstances of the case, had no right at all to prove the reputation of deceased for peace and quiet, it is further contended that, if he had, no proper foundation was laid to warrant its introduction, and that the ruling of the court should be sustained here on that ground. It is quite clear, however, that the ruling of the court striking out the answer of the witness relative to the circumstances under which the reputation of deceased for the traits involved was not good was based on no such ground, as none such was urged by the people. It was stricken out solely upon the ground that the court was of the opinion that the general answer of the witness that the reputation of deceased was good absolutely precluded defendant from further particular inquiry upon the subject. It is quite evident, too, that the subsequent ruling was prompted by this view of the court as to the law. Waiving for a moment consideration of the question whether

the evidence sought to be introduced was at all material or competent in the case, and assuming that it would be our duty to sustain the general ruling of the court rejecting the same if the particular objection that no proper foundation for its admission was well taken, even though the ruling of the court was evidently not based on that ground, we are nevertheless satisfied from the evidence that if the ruling could be considered as predicated upon that objection it cannot be sustained. It will be observed that the objection does not specify any particular foundation which defendant failed to lay; but it is now argued, dealing more directly with the last question asked the witness and sustained, that it was essential, before the defendant could be allowed to show what the reputation of deceased for peace and quiet was when he was drunk, that there should be evidence before the jury that the deceased was in fact drunk on the night of the homicide, that defendant knew it, and knew, further, what the reputation of deceased for these traits was when in that condition. But this particular objection, we think, has no force, as, in our opinion, there was sufficient evidence before the jury not only tending to prove that defendant knew the reputation of deceased, but further tending to prove the other facts which, it is claimed by respondent, should have been proven in order to establish a proper foundation upon which to permit evidence to be introduced of the reputation of deceased for the traits involved. The obvious purpose of the testimony which defendant was endeavoring to elicit at this stage of the case was to prove that the deceased had the reputation of being a quarrelsome, violent, and dangerous man when intoxicated.

From the uncontradicted evidence in the case that deceased had spent at least seven hours of the night immediately preceding his death in visiting the various saloons in Mojave and frequently drinking therein, the jury had a right to infer as a matter of common knowledge that the deceased was intoxicated to such an extent as to have lost the normal control of his physical and mental faculties, and if when intoxicated he was, as defendant was endeavoring to prove, a violent, quarrelsome, and dangerous man, that he was when he entered the house of ill-fame referred to in such condition from liquor that these traits predominated him. As to de-

fendant's knowledge that deceased was intoxicated, and that when in that condition he was a dangerous man, the evidence of the defendant himself, and the warnings given him of the danger of meeting Delaney that night because he was drinking, tend to support both facts. As to the knowledge of defendant of the reputation of deceased, it is further to be observed that the evidence tends to show defendant was well acquainted with deceased, had lived in the little town of Mojave several years, was familiar with the places—the saloons—which they both frequented, and generally with the persons who owned or resorted to them. It would be in such places, and among such people, that the reputation of the deceased would be best known, and if the deceased had the general reputation which defendant sought to prove, it would naturally be matter of public notoriety there. And under the circumstances it must be presumed that defendant had knowledge of it. (*Trabune* v. *Commonwealth,* 13 Ky. Law Rep. 343, [17 S. W. 186]; *Harrison* v. *Commonwealth,* 79 Va. 380, [52 Am. Rep. 634]; *Reynolds* v. *People,* 17 Abb. Pr. (N. Y.) 417; Horrigan & Thompson on Cases of Self-Defense, p. 696.) From these considerations we are satisfied that when the excluded testimony was offered there was sufficient evidence tending to establish a foundation for its admission. And if it were admissible, it was certainly no ground for striking out the first answer and sustaining an objection to the second that the witness had preliminarily stated that the general reputation for peace and quiet of the deceased was good. The defendant was not concluded by that answer from showing, if he could, that this favorable reputation was not the same under all circumstances and conditions. A man may possess different characters or different reputations, adapted to different localities or different conditions of mind, and as applied to the inquiry at hand the deceased may have had one reputation for peace and quiet when sober, and quite another for these same traits when drunk. The existence of these different reputations under different conditions of mind was what the defendant sought to show,—the reputation of deceased for violence when intoxicated, as contradistinguished from his reputation for peace when sober,—and the reason assigned by the court afforded no warrant of itself for rejecting it.

Neither can we accord with the further contention of respondent that upon no principle of law was the evidence admissible. On the contrary, under the circumstances of the case as presented to the jury, we think that the offer to show that the general reputation of deceased was that of a quarrelsome, violent, dangerous man when intoxicated was both proper and pertinent. We say, under the circumstances of the case, because it is undoubtedly true that, as an abstract proposition, the good or bad character of the deceased cannot be taken into consideration as an element influencing the jury in determining the guilt of a defendant. All men, independent of their character or reputation, are under the equal protection of the law, and it in no degree excuses or palliates the taking of human life that the person slain was of bad character or reputation; the offense is as great whether the life maliciously taken be that of a man of bad or of good character. But while the general rule is that evidence of the bad reputation of deceased for peace and quiet cannot be given in evidence, still this rule has its exceptions applicable to cases where the facts and circumstances surrounding them are peculiar. Such an exception applies in cases of homicide where the plea of self-defense is interposed and the evidence before the jury leaves it in doubt whether the deceased was the aggressor, or where the circumstances attending the homicide render it doubtful or equivocal whether the defendant was justified in believing himself in imminent danger at the hands of deceased. The conflicting evidence in the case at bar brought the case within the exception stated, as presenting a situation where the sufficiency of the plea of self-defense made by the defendant in the essential elements necessary to constitute it, was enveloped in doubt.

It was early laid down as the rule in this state that under such circumstances evidence of the reputation of the deceased for violence is admissible. In *People* v. *Murray,* 10 Cal 310, this court says: "The other point is, the exclusion of evidence of the character of the deceased for turbulence, recklessness, and violence. The rule is well settled that the reputation of the deceased cannot be given in evidence, unless, at the least, the circumstances of the case raise a doubt in regard to the question whether the prisoner acted in self-

defense. It is no excuse for a murder that the person murdered was a bad man; but it has been held that the reputation of the deceased may sometimes be given in proof to show that the defendant was justified in believing himself in danger, when the circumstances of the contest are equivocal." The case of *People* v. *Anderson*, 39 Cal. 704, also confirm this doctrine. These cases lay down the broad rule that in all cases of homicide, where the other evidence introduced raises a doubt whether defendant acted in self-defense, evidence of the reputation of the deceased is admissible, and this rule applies as to every essential issue in the case upon which that plea is founded. It is always a vital issue before the jury, when such a plea is interposed, as to who was the aggressor in the contest. In the case at bar this issue, under the evidence, was involved in doubt, and any fact which would under such circumstances serve to illustrate who was the assailant in the encounter, where the death of one of the parties ensued, would be admissible. In such equivocal condition of the evidence the reputation of the deceased as a violent, turbulent, dangerous man would be a legitimate subject of inquiry, illustrating the animus with which he encountered the defendant. It would be a circumstance immediately connected with the quarrel tending to illustrate the true intent or motive which characterized the conduct of deceased therein, to be taken into consideration by the jury in connection with the other facts and circumstances in the case in determining who was the aggressor in the fatal contest.

It is the rule in this state that threats of hostile intention made by a deceased, whether communicated or uncommunicated, are admissible evidence for the said purpose when the evidence is equivocal. (*People* v. *Scoggins,* 37 Cal. 686; *People* v. *Travis,* 56 Cal. 251; *People* v. *Tamkin,* 62 Cal. 468; *People* v. *Thomson,* 92 Cal. 506, [28 Pac. 589].) The philosophy which supports this rule as to the admissibility of evidence of such threats, where it is otherwise in doubt from the evidence who was the assailant, is that it is more probable that one who has made threats of hostile intention towards another would, when opportunity permits, attempt to carry such threats into execution and become the assailant, than would one who has made no such threats or declared

no such intention. So, too, with reference to the admissibility of evidence of the reputation of deceased as being a violent, turbulent, dangerous man, such proof, when the evidence as to who was the assailant is in doubt, for a similar philosophic reason should be permitted; it being more probable that one bearing such a reputation would precipitate a deadly contest than would one having no such reputation. Hence we think the rule should be that whenever the circumstances of a case permit of the admission of evidence of threats made by the deceased against the defendant, either communicated or uncommunicated, evidence of the reputation of the deceased as being a violent, quarrelsome, dangerous man, either known or unknown to the defendant, is equally admissible, the consideration of the jury to be limited by proper instructions of the court, where the reputation is unknown to defendant, to the same extent that the law limits the consideration by them of uncommunicated threats—to the question solely as to who was the assailant in the fatal encounter. The rule as to such limitation when applied to uncommunicated threats is declared in *People* v. *Scoggins,* 37 Cal. 686.

Our consideration has thus far been addressed to the admissibility of the offered testimony as bearing upon the question of who was the aggressor in the contest, and which the evidence left in doubt. The evidence was, however, not only equivocal on this point, but as to all the other circumstances immediately attending the fatal encounter. In such state of the evidence there can be no doubt, under the authorities heretofore cited (*People* v. *Murray,* 10 Cal. 310; *People* v. *Anderson,* 39 Cal. 704; and *People* v. *Tamkin,* 62 Cal. 468), that evidence of the reputation of deceased, known to defendant at the time of the contest, was admissible as bearing on the question whether defendant was justified in believing himself in imminent danger from deceased; whether his knowledge of the reputation of deceased, taken into consideration with all the other circumstances in the case, was sufficient to excite the fears of defendant as a reasonable man that deceased intended to inflict great bodily harm upon him or to slay him. The general rule on this point is already clearly stated in the foregoing authorities, and any extended discussion of it is unnecessary. The purpose of allowing such

evidence when the plea is self-defense is to put the jury in possession as nearly as possible of all the facts attending the homicide, and upon a knowledge or observation of which the defendant acted. It is familiar law that where a defendant claims to have acted in self-defense, a danger which is apparently imminent, and which a reasonable man, situated as the defendant was, knowing what he knew and seeing what he saw, would deem so, is to be considered, for the purposes of supporting such plea, as actually and really imminent. In this view of the law it is quite evident that, where a defendant has knowledge of the reputation of his adversary as a violent and dangerous man, the apparent peril in which he is placed must necessarily appear to him more imminent than if he possessed no such knowledge. Hence, when there is evidence in a case tending to support the claim of a defendant that he acted upon an honest apprehension of imminent peril from some overt act on the part of the deceased, and the circumstances of the fatal contest are equivocal, the reputation of the deceased as a violent and dangerous man is proper and competent evidence to present to the jury for consideration in determining whether defendant acted upon a reasonable apprehension that he was in imminent peril. It is obvious that under such circumstances, as the known reputation of the deceased for the traits involved would necessarily operate upon the mind of the defendant, such reputation is a matter of proper and legitimate consideration for the jury. In the case at bar we are satisfied that in the doubtful state of the evidence as it stood when the testimony to prove the reputation of the deceased as a violent, quarrelsome, and dangerous man when intoxicated was offered, the testimony for the reasons we have indicated, should have been permitted to go before the jury.

Some other points are made for a reversal. It is claimed that no sufficient preliminary proof was made to warrant the admission in evidence of the deposition of a witness taken at the preliminary examination in the justice's court, and who was absent from the state at the time of the trial. The objection of defendant was that no proper foundation was laid. This objection was too general. It should have pointed out wherein there was a failure to lay a proper foundation. There are several matters necessary to be proven to warrant

the admission in evidence of a deposition taken at a preliminary examination, and counsel should have specified the particular deficiency in the proof which he claimed existed. As the particular proof which for the first time it is urged here that the prosecution should have made can be readily supplied on a new trial, it is unnecessary to pursue the matter further. None of the other points urged by defendant have any merit.

The order denying the motion of defendant for a new trial and the judgment are reversed and the cause remanded for a new trial.

Beatty, C. J., Henshaw, J., Shaw, J., Angellotti, J., and McFarland, J., concurred.