[Crim. No. 37.   In Bank.—March 24, 1896.]

# THE PEOPLE, RESPONDENT, *v.* JOHN E. HOWARD, APPELLANT.

CRIMINAL LAW—HOMICIDE — EVIDENCE — CROSS-EXAMINATION—HARMLESS RULING—ERROR CURED BY SUBSEQUENT EVIDENCE.—On the trial of a defendant accused of murder, where a woman who was living with the deceased had testified in chief for the prosecution that the defendant, the day before the killing, called at her house and inquired for the deceased, and made threats in regard to him, it is proper to allow the defendant to ask, on her cross-examination, whether she had sent for a policeman, and whether defendant, who was a deputy marshal, did not go in response to such request, in order to rebut an unfavorable inference from her testimony; but the exclusion of the evidence, when first offered, with liberty to the defendant to recall the witness as his own, is harmless, where the defendant was not deprived of the evidence by the ruling, and the witness finally answered the question upon cross-examination.

ID.—IMMATERIAL EVIDENCE—EMPLOYMENT OF DEFENDANT BY MARSHAL.— When the theory of the defense was that deceased became indignant with defendant and assaulted him, because he thought defendant had attempted to have him arrested for beating the woman with whom he was living, evidence that defendant was employed by the city marshal to find evidence in a certain class of cases, not connected with the fatal affray, is immaterial.

ID.—REPUTATION OF DECEASED—REBUTTAL.—Where the reputation of the deceased for peace and quietness was assailed by the defendant without objection on the ground that it did not appear that defendant knew of the reputation of the deceased, and it was assumed from the evidence by court and counsel that the reputation of deceased was known to the defendant, and the evidence tended to show such knowledge, the prosecution may show in rebuttal that the reputation of the deceased for peace and quietness was good, and the defendant cannot properly object to the rebuttal of the defendant's evidence on the ground that it was not made to appear by defendant's evidence that defendant knew of the bad reputation of the deceased.

ID.—INSTRUCTION REQUESTED — SELF-DEFENSE—INAPPLICABILITY TO EVIDENCE—INSUFFICIENT STATEMENT.—An instruction requested by the defendant that "one whose life has been threatened may arm himself to resist his foe, and if he casually meets such foe, having good reason to believe him armed and ready to execute his threats, and that his personal safety can be secured in no other way, need not wait to be assaulted, but may secure himself from the imminent danger even by killing his adversary if necessary," is properly refused as inapplicable to the evidence where the theory of the defense and the testimony of the defendant was that deceased was slain while making a murderous assault with a deadly weapon, and there was no evidence tending to prove a case to which the instruction could be applicable, and also as being erroneous,

in not requiring that the defendant shall believe himself in imminent danger, and that the killing was necessary, and that the circumstances must be such as would convince a reasonable man that danger was imminent, and that it was absolutely necessary to take life to save himself from death or great bodily injury, and in using the phrase "personal safety," which does not necessarily indicate the class of injuries, danger and fear of which will alone justify taking human life.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a new trial. W. S. GRAY, Judge.

The facts are stated in the opinion of the court.

*Lamberson & Middlecoff*, and *H. C. Lillie*, for Appellant.

The court erred in sustaining the objection to the question asked Susana Del Gardo by the defense on cross-examination as to whether she had sent for a policeman by Bradley, as it tended to show that her testimony was untrue, and to show all the facts which led up to the taking place of the conversation concerning which she had testified. (Code Civ. Proc., sec. 2048; *People* v. *Lee Chuck*, 74 Cal. 30; *People* v. *Chin Mook Sow*, 51 Cal. 597; *Jackson* v. *Feather River etc. Co.*, 14 Cal. 18; *Harper* v. *Lamping*, 33 Cal. 648; *People* v. *Lee Ah Chuck*, 66 Cal. 662; *Watrous* v. *Cunningham*, 71 Cal. 30; *People* v. *Thomson*, 92 Cal. 506; *People* v. *Gillis*, 97 Cal. 542; *Santa Ana* v. *Harlin*, 99 Cal. 538.) And in no case should the defendant be compelled to recall, and make his own, a witness, produced by the prosecution. (*People* v. *Lee Chuck*, *supra*.) For the same reasons, the court erred in sustaining the objection to the cross-examination of witness Bradley, to ascertain if the interview between Susana Del Gardo and defendant had not been brought about in the manner defendant claimed it had. It was error for the court to allow the witness Knapp to testify as to the reputation of the deceased, as he had only talked with two other persons about it. This was not sufficient to base an opinion on. (*State* v. *Regan*, 8 Wash. 506; 1 Greenleaf on Evidence, sec. 101, note a.) As no proof was offered to show that the bad

reputation of deceased for peace and quiet was known to defendant, it was not competent for the prosecution to prove the good reputation of deceased, it being irrelevant matter. (*Donnelly* v. *Curran,* 54 Cal. 282; *People* v. *Mitchell,* 62 Cal. 411; *People* v. *Dye,* 75 Cal. 108; *San Diego etc. Co.* v. *Neale,* 78 Cal. 63; *State* v. *Kennade,* 121 Mo. 405.) The court erred in overruling the objection of the defendant to the questions asked of the witness W. J. Carlisle concerning defendant being an officer. The court erred in refusing to instruct the jury that one whose life has been threatened may arm himself to resist his foe; and if he casually meets such foe, having good reason to believe him armed and ready to execute his threats, and that his personal safety can be secured in no other way, need not wait to be assaulted, but may secure himself from the imminent danger by killing his adversary, if necessary. (Pen. Code, sec. 198.) And in adding to the fifth instruction given: "On the other hand, if from the evidence you believe that without any overt act or physical demonstration upon the part of the deceased sufficient to warrant the defendant as a reasonable man in believing that he was in great bodily danger, he, the defendant, fired the fatal shot at the deceased, and killed him, such killing, under such circumstances, was not justifiable." (*Bohannon* v. *Commonwealth,* 8 Bush, 481; 8 Am. Rep. 474; *Phillips* v. *Commonwealth,* 2 Duvall, 328; 87 Am. Dec. 499; *Goodall* v. *State,* 1 Or. 333; 80 Am. Dec. 396; *State* v. *Conolly,* 3 Or. 69; *Oakley* v. *Commonwealth* (Ky.), 11 S. W. Rep. 72; *State* v. *Jackson* (S. C.), 10 S. E. Rep. 769; *Brown* v. *Commonwealth* (Va.), 10 S. E. Rep. 745.) It was error to overrule the objections of the defendant to the remarks of the deputy district attorney, as they were an attack upon the character of defendant, which was not in issue. (*Wartelsky* v. *McGee* (Tex. Civ. App.), 30 S. W. Rep. 69; *People* v. *Mitchell, supra; People* v. *Devine,* 95 Cal. 231; *People* v. *Lee Chuck,* 78 Cal. 327; *People* v. *Bowers,* 79 Cal. 415; *People* v. *Ah Len,* 92 Cal. 282; 27 Am. St. Rep. 103; *People* v. *Wells,* 100 Cal. 459.)

*W. F. Fitzgerald, Attorney General,* and *Charles H. Jackson, Deputy Attorney General,* for Respondent.

The testimony of Susana Del Gardo as to the threats made by defendant to her against deceased, and as to whether she had told Bradley to send an officer to see her, was properly ruled out, not being proper cross-examination. The defense should have made her its witness. As witness Knapp testified that he knew the reputation of deceased " in his lifetime among the people with whom he associated, for peace and quiet," and that it was good, that was sufficient to base his opinion upon, as it was general. (*People* v. *Bush,* 68 Cal. 629; *People* v. *Methwin,*·53 Cal. 68; 21 Am. & Eng. Ency. of Law, 20.) There was sufficient foundation laid for the introduction of testimony by the prosecution as to the good reputation of De La Nina, as there was abundant proof that defendant knew his character to be bad. Evidence of the bad reputation of deceased was relevant. (*People* v. *Powell,* 87 Cal. 362.) It was proper cross-examination to ask witness Carlisle if defendant was, in this case, a deputy of his, as he had testified on direct examination that he was in his employ. In its addition to instruction 5 the court merely repeated what it had correctly given in the preceding lines, therefore no injury resulted to defendant from the repetition. The remarks of the district attorney complained of were based upon proof .offered repeatedly during the trial, and did not amount to error or prejudice. (*People* v. *Ward,* 110 Cal. 369; *People* v. *Lee Ah Yute,* 60 Cal. 95; *People* v. *Barnhart,* 59 Cal. 402; *People* v. *Ah Fook,* 64 Cal. 383; *People* v. *Wheeler,* 65 Cal. 77; *People* v. *Hamberg,* 84 Cal. 473; *People* v. *Ross,* 85 Cal. 384; Pen. Code, sec. 1258.)

TEMPLE, J.—Defendant having been convicted of the crime of murder in the first degree and sentenced to suffer death, takes this appeal from the judgment and from an order refusing a new trial.

The first point has reference to certain rulings sustain-

ing objections to questions propounded by the defense
on cross-examination of witnesses for the people.

The deceased, prior to the homicide, was living with
a prostitute named Susana Del Gardo. She testified for
the prosecution that on the day preceding the killing
the defendant called at her house and inquired for the
deceased, and that being informed that he was not there,
proceeded to utter some threats in regard to him. On
cross-examination she was asked by counsel for the de-
fense if she had sent for a policeman by one Bradley.
This was objected to on the ground that it was not
proper cross-examination. Counsel for the defense
stated that they proposed to show that she had sent for
a policeman, and that defendant, who was acting as a
deputy marshal, went in response to such request. The
objection was sustained, the court saying: " You have
the liberty to recall the witness as your own."

I think the question should have been allowed, but it
was at least a debatable question, and, upon such mat-
ters, a large discretion must be given to the trial court.
The defense was not deprived of the evidence by the
ruling, and I think we can see that defendant was not
injured.

The witness did finally answer the question on cross-
examination, for she said she had not sent by anyone
word to the marshal to the effect suggested. The testi-
mony would have been important as explaining that
defendant was not then seeking the deceased, but it
would not have qualified or contradicted anything that
the witness had said. It was a new fact favorable to the
defendant. I think it was legitimate cross-examination,
for it would have rebutted an unfavorable inference
which might be made from the testimony of the wit-
ness. But it would have been just as effectual for that
purpose if given by the defense as their own testimony.

The same course of reasoning will dispose of a similar
exception taken during the cross-examination of Bradley.

I am unable to see how the fact (if it was a fact) that
defendant was employed by the city marshal to find

evidence to secure convictions in a certain class of cases would have thrown any light upon ·the homicide. Nothing indicates that a prosecution of that character was contemplated against the deceased. On the contrary, it seems that the deceased was expected to assist defendant in procuring evidence. The theory of the defense, however, was not that the fatal affray grew out of this matter, but that deceased was indignant because he thought defendant had attempted to have him arrested for beating the witness Del Gardo, and, therefore, made an assault upon him.

Evidence was offered by the defense and received without objection to the effect that the reputation of De La Nina for peace and quietness was bad. Afterward, the prosecution in rebuttal offered testimony to the effect that De La Nina's reputation in the respects named was good. The defense objected on the ground that it was irrelevant, immaterial, and incompetent, and that no foundation had been laid for the introduction of such testimony. The objection was overruled and the evidence was received. It is now claimed here that this ruling was erroneous.

This contention seems to be founded upon the proposition that the evidence introduced by the defense upon this point was wholly immaterial, because it was not made to appear that defendant knew of the bad reputation of the deceased—if it was bad—and therefore, it was error to permit the prosecution to disprove it. But I do not think this proposition can be maintained. The evidence shows that defendant was acting as deputy marshal of Tulare. He testified in his own behalf that he knew De La Nina quite well. The testimony given by several witnesses tended to prove that they were quite well acquainted. The witness Del Gardo testified that defendant told her that De La Nina was a man he did not like, and that he was glad "to get to run him out of town and make him some trouble." He claims himself that he went to the house of Del Gardo to see about arresting deceased for having beaten

his mistress, and that several different persons had informed him of threats made against him by the deceased. It was, therefore, doubtless assumed by court and counsel that whatever reputation De La Nina bore was known to the defendant. The defendant cannot complain that this proposition was practically conceded to them. According to their own contention, therefore, the evidence was material.

In rare cases such evidence may be introduced as one of the circumstances tending to justify a defendant in the belief that he is in imminent danger, and that it was necessary to take life in self-defense. Of course it could have no material bearing upon that point, unless defendant was, at the time, aware of the character of his assailant. In this case all parties seem to have assumed that such knowledge existed, and I think the state of the evidence warranted the belief.

Many other objections were taken to rulings admitting or refusing to admit evidence. But they were all unimportant, and, in my judgment, they are all correct. A discussion of them would not be interesting or profitable.

The court refused to give the following instruction asked by the defendant. In so doing, it is contended, the court erred: " One whose life has been threatened may arm himself to resist his foe; and, if he casually meets such foe, having good reason to believe him armed and ready to execute his threats, and that his personal safety can be secured in no other way, need not wait to be assaulted, but may secure himself from the imminent danger, even by killing his adversary, if necessary."

I find considerable difficulty in understanding why the defense desired this instruction, or upon what view of the facts it could help them. The prosecution claimed hat there had been some wordy dispute between the defendant and De La Nina, and that defendant shot deceased, after deceased had turned away from him, through his head from behind, and that deceased was

unarmed and had made no demonstration toward defendant.

The theory of the defense and the evidence of the defendant was that the deceased was slain while making a murderous assault upon the defendant with a deadly weapon. There was no evidence whatever tending to make a case to which the instruction asked would have the slightest application.

But the instruction was not correct. A homicide committed under the circumstances indicated would be murder. It lacks several matters essential to a case of self-defense: 1. It does not require that a defendant shall believe himself in imminent danger, nor that the killing is necessary; 2. It leaves out the requirement that the circumstances must be such as would convince a reasonable man that danger was imminent, and that it was absolutely necessary to take life to save himself from death or great bodily injury. It not only does not require that the danger shall be real, but ignores the doctrine of appearances as well; and 3. It tells the jury that to secure immunity from any sort of personal injury would justify the taking of human life.

The phrase " personal safety" does not necessarily indicate the class of injuries, danger and fear of which will alone justify taking human life.

The addition made by the court to the fifth instruction asked by the defendant correctly states the law upon the subject.

There was nothing in the line of argument pursued by the district attorney of which the defendant can rightfully complain.

The judgment and order are affirmed.

GAROUTTE, J., HARRISON, J., VAN FLEET, J., McFARLAND, J., and HENSHAW, J., concurred.

BEATTY, J., concurring.—I concur in the judgment. As to the ruling of the court upon the question to the witness Del Gardo, it was clearly erroneous, and the propriety of the question, in my opinion, not open to

debate.  It was also highly material, and the exclusion
of the evidence could not be defended upon the ground
that it was within the discretion of the court.  But the
witness subsequently answered questions to the same
effect, and therefore, it can be seen that the ruling
though erroneous, was not prejudicial.

As to the instruction refused by the court, and com-
mented upon by Justice Temple, it was perhaps not suffi-·
ciently explicit in some respects, but is not, in my
opinion, open to the second ground of objection stated by
him.  Its refusal was justified, however, upon the ground
that there was no evidence to which it was pertinent.

Rehearing denied.