[Crim. No. 3197. Second Appellate District, Division One.—August 22, 1939.]

THE PEOPLE, Respondent, v. CORNELIUS L. JEFFERSON, Appellant.

Kent Blanch and Charles M. Fueller for Appellant.

Earl Warren, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

YORK, P. J.—Appellant was charged in an information with the crime of murder committed on or about September 29, 1938, and pleaded "not guilty" to the charge. Thereafter the jury returned a verdict finding appellant guilty of the crime of manslaughter, a lesser offense than that charged in the information but necessarily included therein. This appeal is prosecuted from the judgment of conviction, as well as from the order by which appellant's motion for a new trial was denied.

On the evening of September 29, 1938, William Yates and his wife, together with two other men and one woman, called at the home of appellant. Accompanied by appellant and his wife, the party, all colored, went to the Elks Cocktail Lounge on Central Avenue in the city of Los Angeles, where they all had drinks and danced, returning later to appellant's apartment, where more drinks were served. About midnight the party broke up and everyone went out to the Yates' car which was parked in front of appellant's house. Mrs. Yates got in the front seat beside her husband who was sitting behind the steering wheel, and the other woman and the two men got into the rear. Lottie Jefferson, appellant's wife, insisted on getting into the front seat next to Mrs. Yates, and asked to be taken to Central Avenue. Appellant objected to this, but Mr. Yates assured him he would not take Mrs. Jefferson any place, whereupon appellant got into his car and drove away. Mr. and Mrs. Yates then tried to persuade Mrs. Jefferson to get out of their car so that they could leave, and finally she did get out of the car but immediately walked around to the other side and took hold of the

steering wheel refusing to let go. The evidence becomes somewhat confused at this point, but it appears from the record that appellant at this time returned to the scene and, according to his own testimony, he found Mr. Yates hitting Mrs. Jefferson, who was sitting on Mrs. Yates and attempting to choke her. With regard to this affray, appellant testified upon cross-examination as follows:

"When I got up and saw that it was my wife that Mr. Yates was hitting, I walked up there and jerked him back and throwed him up against his car and picked my wife up, and I walked up to him and asked him what did he mean by hitting my wife like that. . . . Q. Then what happened? A. Well, when I asked of Mr. Yates what did he mean by hitting my wife like that, he put his hand in his pocket and come out with a knife and started toward me cussing. . . . I kept backing, I backed away from him and told him not to come up on me. . . . And he kept coming and cussing and I just kept begging him not to come up on me and I stopped and fired a shot to scare him. Q. You fired that shot up in the air, is that what you mean? Is that right? A. Yes, that is right. Q. And then what happened? A. He kept coming on me and I kept hollering not to come on me and I backed up against the side of the wall and fell in a hole and then I fired a shot at him. Q. When you fired that second shot you meant to shoot to kill him. A. I meant to hit him."

After the shooting, Mr. Yates walked to the automobile where he was placed on the back seat and taken to a hospital. He died on October 2, 1938, as a result of injuries he sustained when he was shot by appellant.

Appellant admitted the killing, but relied upon his plea of self-defense in justification of his conduct, contending upon this appeal that "the sole issuable fact is whether the acts and conduct of the deceased were sufficient to excite in the defendant a reasonable fear that the deceased intended and would do defendant some great bodily injury".

For a reversal of the judgment of conviction, appellant relies upon the following points:

"1. That the verdict is contrary to the evidence.

"2. The exclusion of testimony respecting the knowledge of defendant of a particular act of violence of the deceased and defendant's state of mind because of said knowledge.

"3. Failure to accord the defendant an opportunity to present newly discovered evidence respecting the actual character of the deceased.

"4. Failure of the court to give certain instructions requested by the defendant.

"5. The giving of three instructions not applicable to the facts of the case or misleading to the jury, to-wit: An instruction on flight, instruction on dying declaration, and instruction with respect to the plea of self-defense and when it was not available.

"6. The admission of testimony respecting the so-called declaration."

In connection with his second point, appellant urges that the court erred in sustaining an objection to his offer to prove that he knew that "on April 25th, in the year 1937, the decedent William Yates assaulted one Howard Morris with a knife, necessitating some 40 stitches, otherwise carved this Howard Morris; that as a result of this affray, Mr. William Yates served some time in the County Jail, and it was at that time that Mr. Jefferson first became acquainted with Mr. Yates, and it was with this knowledge of this tendency on the part of Mr. Yates to resort to the use of a knife in physical combat that made him (appellant) act as he did on the evening of September 29, 1938".

Appellant testified that decedent's reputation for peace and quiet was bad. To the question asked of appellant, "Did you have any reason to feel that Mr. Yates might cut you with that knife?" the prosecution objected "unless it is confined to this particular occasion when the shooting occurred or some threat communicated by some manner and means, some threat by Yates toward the life or safety of this individual. My point is that there is an exception to the hearsay rule and it is confined to general reputation or threats by the decedent or assailant toward the witness or defendant. The Court: Well, I think it can go a little beyond that. It seems to me that you put something in that question that won't get by. The objection is sustained to that particular question. Q. By Mr. Fueller: On this evening, had you any knowledge of any act previously done by Mr. Yates which caused you to fear that he might cut you with that knife? Mr. Leavy: I object to that, if the Court please, unless it was an act done toward the defendant at some past time by the decedent, or else some threat made by

the decedent toward this defendant and communicated by some manner or means. . . . The Court: The objection is overruled to that question, answer yes or no. A. Yes. Q. By Mr. Fueller: What was that knowledge? Mr. Leavy: I object to that as incompetent, irrelevant and immaterial. . . . The Court: Objection sustained to that. Mr. Blanche: May we ask at this time, if the Court please, does the Court feel that any light that he might throw on what knowledge that he had would be irrelevant? The Court: I don't know that it is necessary to follow it any further, unless the district attorney wants to find out what he bases it on. Mr. Blanche: May we make our offer of proof at this time then? The Court: Is it the same offer that you made before? Mr. Blanche: The offer as to the particular act which we discussed. The Court: Do you object to it? Mr. Leavy: I didn't hear your inquiry. The Court: He just wants to make an offer of proof substantially the same as was made. Mr. Leavy: I will stipulate that they are making the same offer of proof as was made before. Mr. Blanche: We are willing to confine our offer of proof in accordance with the Court's suggestion. The Court: And you are objecting to that? Mr. Leavy: We object to this last question on the ground that I objected and for the reasons before that I gave. The Court: The objection is sustained.''

■ "While the general rule is that the reputation of deceased cannot be given in evidence, an exception arises where the plea of self-defense is interposed and the evidence leaves it in doubt whether the deceased was the aggressor, or where the circumstances attending the homicide render it doubtful whether the defendant was justified in believing himself in imminent danger at the hands of deceased. (*People* v. *Lamar*, 148 Cal. 564 [83 Pac. 993]; *People* v. *Powell*, 87 Cal. 348 [25 Pac. 481, 11 L. R. A. 75].) ■ Evidence of the reputation of deceased, *unknown* to the defendant at the time of the homicide, must be limited to the question as to who was the assailant, but on the other hand, where such reputation was *known* to defendant, *evidence thereof is admissible*, not only to determine the aggressor but also *as bearing on the question whether defendant was justified in believing himself in imminent danger—whether his knowledge of the reputation of deceased, taken into consideration with all the other circumstances, was sufficient to excite the fears of a reasonable man. (People* v. *Lamar*, 148 Cal. 564 [83 Pac. 993];

*People* v. *Howard,* 112 Cal. 135 [44 Pac. 464]; *People* v. *Powell,* 87 Cal. 348 [25 Pac. 481, 11 L. R. A. 75]; *People* v. *Singh,* 78 Cal. App. 488 [248 Pac. 986].) ▆ Such evidence should be confined to the traits of character which are in issue, and should bear some analogy and reference to the nature of the charge. (*People* v. *Cord,* 157 Cal. 562 [108 Pac. 511]; *People* v. *Barrett,* 22 Cal. App. 780 [136 Pac. 520]; *People* v. *Haydon,* 18 Cal. App. 543 [123 Pac. 1102].) The reputation of deceased for peace and quiet is involved. . . . But it has been held that evidence is not admissible to show that deceased has been convicted of simple assault upon another. (*People* v. *Griner,* 124 Cal. 19 [56 Pac. 625])." (13 Cal. Jur., p. 693.) (Italics added.)

In the case of *People* v. *Hoffman,* 195 Cal. 295, at 310 [232 Pac. 974], it is stated: "Where the only question to be determined is the existence and reasonableness of the belief under which the deceased claims to have acted in self-defense, evidence of the bad reputation of the deceased, or of one whom the defendant supposed to be his assailant, is wholly immaterial and inadmissible unless the defendant first shows that he had knowledge of such reputation. (*State* v. *Kennade,* 121 Mo. 405 [26 S. W. 347]; *State* v. *Rollins,* 113 N. C. 722 [18 S. E. 394]; *Commonwealth* v. *Straesser,* 153 Pa. St. 451 [26 Atl. 17]; *State* v. *Blassengame,* 132 La. 250 [61 So. 219].) . . . Moreover, there is respectable authority for the proposition that the reputation for peace and quiet of the decedent, or of one whom the defendant supposed to be his assailant, is not alone sufficient where the issue is self-defense, but must be coupled with that person's reputation as a violent, turbulent and bloodthirsty man. (*Tribble* v. *State,* 145 Ala. 23 [40 So. 938]; *King* v. *State,* 17 Ala. App. 381 [85 So. 876].)"

Also, in the case of *People* v. *Singh,* 78 Cal. App. 488, at 496 [248 Pac. 986], it was held that it was error to reject evidence offered by the defendant that the deceased was in the habit of carrying a gun, with which he had on prior occasions threatened others, and that these facts were known to the defendant, the court there stating: "Assuming that the evidence already before the court tended to show that immediately before the shooting occurred Hager had 'jumped at, or toward, or on' defendant, with knowledge in defendant that Hager was probably armed and that theretofore with a 'gun' he had threatened other persons, the serious and legally

pertinent question would arise as to whether in such circumstances, as a reasonable man, defendant would be justified in believing that either his life was in danger or that great bodily harm would result to him by reason of conditions then and there existing. It is clear that so considered the offered evidence was admissible and that defendant was substantially prejudiced by reason of the refusal of the trial court to permit such evidence to be introduced.''

█ Several witnesses testified that they heard appellant tell the deceased, "Don't come up to me," or "Don't come back," or "Don't come upon me"; and "If you come upon me I will shoot, I will shoot you," and also that Mr. Jefferson (appellant) was backing and Mr. Yates (decedent) was walking toward him.

In the circumstances presented by the record herein and upon the authority of the cases hereinbefore cited, it was prejudicial error to exclude testimony respecting appellant's knowledge, acquired prior to the time he fired the two shots, with regard to decedent's proclivity to resort to the use of a knife while engaged in physical combat.

Because of the conclusion reached by this court upon the question hereinbefore discussed, it is not deemed necessary to pass upon the other points raised by appellant.

The judgment and the order denying appellant's motion for a new trial are, and each of them is, reversed.

Doran, J., and White, J., concurred.