[Crim. No. 708.   Fourth Dist.   Dec. 22, 1947.]

THE PEOPLE, Respondent, v. STANLEY WONG, Appellant.

Edgar B. Hervey and Henry F. Walker for Appellant.

Fred N. Howser, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

MARKS, J.—This is an appeal from a judgment sentencing defendant to the penitentiary after he had been found guilty of assault with a deadly weapon and also an appeal from the order denying his motion for new trial.

The information charged defendant with "assault with intent to commit murder, in violation of Section 217 of the Penal Code of the State of California, in that on or about the 25th day of January, 1947, in the County of Imperial, State of California, the said defendant, Stanley Wong, unlawfully assaulted one Angelo Abellera with a deadly weapon, to wit, a 32 caliber automatic pistol with intent to commit murder."

After a protracted trial, the jury found the defendant guilty as charged. On motion for new trial, the trial judge, under the authority of subdivision 6, section 1181 of the Penal Code, found the evidence insufficient to show defendant guilty of assault with a deadly weapon with intent to commit murder, but found him guilty of the lesser crime of assault with a deadly weapon and pronounced judgment accordingly.

Defendant admitted shooting Abellera twice with a .32-caliber automatic pistol, but sought to justify his act by the plea of self-defense of his own person, defense of property and defense of another.

Defendant was employed as assistant dealer in a gambling house in Brawley, in Imperial County. Shortly before 9 o'clock p. m. on January 25, 1947, Abellera entered the establishment and started to play a Chinese gambling game called "Hi Que," at what is designated in the record as table No. 1. Defendant was seated at near-by table No. 3, where another game was in progress. Abellera claimed to have lost about $40, when, during the progress of a "hand" which he believed gave promise of winning, the manager announced that closing time had arrived and that the games were closed.

Abellera asked permission to play out the hand, which was refused. He then shook the table, spilling chips, dice and dominoes to the floor and, as defendant maintains and Abellera denied, some money.

From this point on, there is a sharp conflict in the evidence. Generally, the witnesses for the People testified that Tom Yee, aged 64 years, an employee of the establishment, rushed over to Abellera and struck him over the head with a "sap," described as an iron pipe about 2 feet long, which was wrapped in paper; that the two scuffled; that defendant rose from his seat at table No. 3, took an automatic pistol from his pocket and shot Abellera; that he advanced a few steps and fired a second shot. The first shot struck Abellera in the back in the fleshy portion of his hip. The second shot was fired when Abellera had turned around to see who was shooting and struck him in the stomach. None of these witnesses saw any money on the table or on the floor.

The story of defendant and his witnesses presents a different picture. Defendant testified he went from table No. 3 into the kitchen to get some crackers as he was hungry; that he heard loud noises in the gambling room of dice, chips and dominoes falling and something that sounded like an exploding bomb; that he took his pistol from a box on a shelf and returned to the gambling room; that he saw Tom Yee and Abellera struggling; that Yee was on his knees, with Abellera bending over him, with his hands on Yee's shoulders or around his neck; that he cried "halt" and fired one shot "wild" to stop the fracas, with no intention of hitting anyone; that Abellera advanced toward him and he fired at Abellera's legs to stop him. This is the shot that hit Abellera in the stomach; that he hit Abellera over the head with the pistol and that it flew out of his hand. It subsequently developed that Abellera was unarmed.

Tom Yee testified that he was sitting in the gambling room reading a paper when the manager announced the games closed; that he heard Abellera ask to finish the "deal" and play one more game; that Abellera tipped over the gaming table, spilling the dice, chips, dominoes and money on the floor; that Abellera picked up some of the money and started for the door; that Yee started after him to stop him; that the two struggled, but that Yee was an old man without much strength, so that Abellera forced him to his knees and

choked him so that he became dizzy; that he heard the two shots fired.

Abellera was seriously wounded by the second shot, which punctured his intestines in numerous places. There is other conflicting evidence concerning statements made to officers after the affray and also after Abellera was released from the hospital, which it is not necessary to detail.

As there was admitted error in instructions, we must further consider the actions of defendant under his claim of shooting Abellera in self-defense. ,

The circumstances under which the right of self-defense arises are set forth in section 197 of the Penal Code and are summarized in 13 California Jurisprudence, page 626, section 34, as follows:

"Homicide is also justifiable when committed by any person in either of the following cases: 1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or, 2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein; or, 3. When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished."

The right of defendant to shoot Abellera in defense of his own person is not established even by the evidence most favorable to defendant. When the first shot was fired, Tom Yee and Abellera were engaged in a scuffle and were several paces from defendant, who testified that he fired the first shot "wild" with no intention of hitting Abellera. However this may be, his aim was either so very bad or so very good that he shot Abellera in the back. When one person shoots another in the back when there is no altercation between them, the plea that the shot was fired in self-defense is far from convincing. It is impossible to see how defendant could have believed that his life was endangered or that there was then a design to do him great bodily injury. The same is true

of the time the second shot was fired. Abellera was unarmed and, even according to defendant, made no hostile gesture toward him except to take a few steps in his direction. Defendant was the aggressor and fired the first shot. Self-defense is not very apparent where the supposed assailed shoots his supposed assailant in the back.

It also would tax credulity to believe that Abellera was attempting to commit a felony upon or to do great bodily injury to Tom Yee. According to the evidence of the defense, the two men were engaged in a scuffle and no weapon was used or in sight. At the most, if we entirely disregard the evidence of several witnesses to the effect that Yee assaulted Abellera with a ''sap,'' Abellera was only guilty of assault and battery, a misdemeanor.

There is evidence, though strongly contradicted, that Abellera picked up some of the house money from the floor and started away with it. There is no suggestion of the amount of money it was claimed he was taking.

The evidence supporting the claim of self-defense is so weak that there can be no wonder that the jury rejected it.

The trial judge instructed the jury in effect that a person is presumed to intend to do that which he voluntarily and wilfully does in fact do, and also is presumed to intend the natural, probable and usual consequences of his acts.

■ It is now well settled that in cases of this kind (except homicide cases), where a specific intent to kill is charged and is a necessary element of the crime, such intent must be proved like any other fact or essential element of the crime or be reasonably deducible from the evidence and may not rest on a presumption. This rule was followed in *People* v. *Snyder,* 15 Cal.2d 706 [104 P.2d 639], where numerous cases are cited supporting it. It was also held that the error in giving such an instruction in this kind of a case was ''beyond the reach of the saving grace of section 4½ of article VI of the Constitution'' and constituted reversible error.

■ Had defendant finally stood convicted of the crime of assault with a deadly weapon, with intent to commit murder, we could have done nothing other than reverse the judgment and direct a new trial. However, such is not the case. On motion for new trial the trial court reduced the offense to assault with a deadly weapon where the specific intent to kill need not be charged nor proved as an independent fact.

This brings the case within the procedure followed in *People* v. *Brown,* 27 Cal.App.2d 612 [81 P.2d 463], where the defendant was charged with and convicted of the crime of assault with a deadly weapon with intent to commit murder. Instructions similar to those given in the instant case were given and were held to be erroneous and the following order was made:

"The judgment from which this appeal is taken is reversed, and the defendant remanded to the trial court with instructions to modify the judgment of assault with intent to commit murder, to assault with a deadly weapon, and that defendant be sentenced accordingly.

"The order denying a new trial is affirmed."

The Brown case was twice cited with approval on other points in the Snyder case, where the Supreme Court said in discussing the instructions:

"Nor are we confronted with a case wherein the error is rendered harmless by virtue of the defendant's conviction of an included offense, or of a distinct offense, not requiring proof of a specific intent."

The procedure followed here rendered harmless the error in giving those instructions and permits the application of section 4½ of article VI of the Constitution so that a reversal of the judgment becomes unnecessary, as there has been no miscarriage of justice.

Defendant complains of an instruction, in which the jury was told in effect that if the jurors believed from the evidence that, without any overt act or physical demonstration on the part of Abellera sufficient to warrant defendant in believing he was in great bodily danger, he shot Abellera, the shooting was not justifiable. There were other instructions, in which the jurors were told that if they *believed* certain things concerning the defense of self-defense the defense could not be sustained.

It is argued that these instructions were erroneous in that they placed on defendant the burden of producing sufficient evidence to raise in the minds of the jurors the belief in the soundness of the defense, while the law only requires a reasonable doubt as to the guilt of the defendant to be raised, citing such cases as *People* v. *Vasquez,* 93 Cal.App. 448 [269 P. 549]; *People* v. *Settles,* 29 Cal.App.2d Supp. 781 [78 P.2d 274]; and *People* v. *Roe,* 189 Cal. 548 [209 P. 560].

It must be admitted that these instructions should not be considered models. In view of the overwhelming evidence of the guilt of defendant and the weakness of the evidence pointing to a shooting in self-defense, we should not reverse the judgment because there has been no miscarriage of justice in this case. However, somewhat similar instructions have been given in cases where judgments were affirmed (*People* v. *Iams,* 57 Cal. 115; *People* v. *Washburn,* 54 Cal. App. 124 [201 P. 335]; *People* v. *Wheeler,* 75 Cal.App.2d 360 [171 P.2d 62]) and where, as here, there were full and fair instructions on the doctrine of reasonable doubt.

█ Defendant further complains of the instructions on self-defense and argues that no instruction covered the several phases of this defense as urged by him.

The trial court gave instruction No. 15, as follows:

"In this case the defendant has interposed three separate defenses involving the law of self-defense; First; defense of himself. Second; defense of another person, and Third; defense of property and the commission of a felony in his presence.

"In order to clearly set forth the instructions on these three phases and parts of the law of self-defense, the court will divide the said instructions into groups. Group 1 will contain all of the instructions on the right of self-defense as applied to the defendant personally. Group 2 will contain instructions as to the right of the defendant to avail himself of the law of self-defense relative to another person and property and the commission of a felony in his presence."

There were given several instructions on these phases of self-defense, substantially correct in themselves but neither one covering the subject involved in the others. Where, as here, various defenses are interposed it would be an unnecessarily difficult task to cover all in each instruction. With the warning we have quoted we cannot see how the jury could have been misled by the method adopted here.

Defendant urges error in many other instructions which it is not necessary to consider in detail. The proof of defendant's guilt is so clear and convincing that it is obvious that there has been no miscarriage of justice.

█ Defendant urges error in sustaining an objection to a question concerning Abellera's general reputation for carrying a gun. We find the following in the testimony of defendant:

"The Court: Well, overruled, You may answer. Did you ever see him carry a weapon at any time? A. A knife, sir. Mr. Mouser: That answer is objected to as not being responsive to the question. The Court: Overruled. Q. What kind of a knife was it you saw him carry? A. A spring knife. Q. How long a blade? A. A blade about that long (indicating). Q. Now, did you ever know of him carrying any other weapon? Mr. Mouser: At this stage I will ask that all the evidence in regard to a knife, which would seem to be an ordinary pocket knife insofar as the blade goes, be stricken from the record and the jury admonished to disregard it. The Court: Motion denied. He stated that is all he ever saw him carry, was a knife, is that right? A. That is right. Q. Did you ever know him to carry any other kind of weapon? A. Only what I heard. The Court: That may be stricken, what he heard. . . . Q. Mr. Wong, do you know the general reputation of Andy Abellera in and around Brawley as to whether he carried a gun? Mr. Mouser: Objected to as incompetent, irrelevant and immaterial. General reputation for peace and quietude might be admissible. The Court: I think that means whether he was a violent or turbulent person, or his reputation for being a peaceable man or a violent and turbulent character. Do you know that reputation? A. Yes, sir. The Court: You may state whether it was good or bad. A. It was bad. Q. And do you know his reputation as to whether he carried a gun? Mr. Mouser: Objected to as incompetent, irrelevant and immaterial. The Court: I don't believe that would be his reputation on that. His reputation is whether a good or bad or violent or turbulent person. Sustained.''

Defendant relies on the cases of *People* v. *Singh,* 78 Cal.App. 488, [248 P. 986], and *People* v. *Jefferson,* 34 Cal.App.2d 278 [93 P.2d 230], as supporting his position.

In the Singh case the defendant was on trial for the murder of one Hager. The court said:

"As has been hereinbefore mentioned, on the trial of the action defendant offered to prove that Hager was in the habit of carrying a 'gun'; that on several different occasions, and within one month preceding his death, Hager had exhibited his 'gun' to several different persons and had threatened them with it; and that such facts were communicated to defendant prior to the date when Hager was killed. . . . Assuming that the evidence already before the court tended to show that

immediately before the shooting occurred Hager had 'jumped at, or toward, or on' defendant; with knowledge in defendant that Hager was probably armed and that theretofore with a 'gun' he had threatened other persons, the serious and legally pertinent question would arise as to whether in such circumstances, as a reasonable man, defendant would be justified in believing that either his life was in danger or that great bodily harm would result to him by reason of conditions then and there existing. It is clear that so considered the offered evidence was admissible and that defendant was substantially prejudiced by reason of the refusal of the trial court to permit such evidence to be introduced."

*People* v. *Jefferson, supra,* presents a somewhat different state of facts. Defendant was on trial for the murder of one Yates who had struck defendant's wife. Defendant interfered and Yates, with a drawn knife, advanced on defendant who retreated until stopped by a wall. He fired one shot in the air and then shot and killed Yates who was still advancing threateningly.

Defendant had become acquainted with Yates while the latter was serving a jail sentence for cutting one Morris with a knife. There was evidence that Yates' reputation for peace and quiet was bad. To the question: "On this evening, had you any knowledge of any act previously done by Mr. Yates which caused you to fear that he might cut you with that knife?" Jefferson was permitted to answer "Yes." An objection was sustained to the question "What was that knowledge?" which was evidently asked with the purpose of bringing out evidence concerning the assault on Morris. It was held error to sustain this objection.

We are not able to harmonize this ruling with the general rule that proof of specific acts of violence or of assaults on third parties are not admissible in evidence. (See *People* v. *Casserio,* 16 Cal.2d 223 [60 P.2d 505]; *People* v. *Soules,* 41 Cal.App.2d 298 [106 P.2d 639]; *People* v. *Keys,* 62 Cal.App.2d 903 [145 P.2d 589].) In the Keys case it was said:

"It is the general rule in California that in a prosecution for murder where the defense of self-defense is interposed, the defendant may introduce evidence that the reputation of the deceased for peace and quiet was bad, and known to him to be bad. Proof of specific acts of violence or proof of a prior conviction for assault are not admissible. (*People* v. *Griner,* 124 Cal. 19 [56 P. 625]; *People* v. *Garcia,* 2 Cal.2d 673 [42

70

P.2d 1013] ; *People* v. *Soules,* 41 Cal.App.2d 298 [106 P.2d 639].)''

The facts in the instant case easily distinguish it from both cases relied on by defendant. Here there is no intimation that Abellera was armed or that he made any motion indicating an intention to draw a weapon. He had not ''jumped at, or toward, or on defendant.'' We have found nothing in the record indicating that defendant had any reasonable ground to believe that Abellera was about to assault him. Under these circumstances, the two cases cannot be controlling and we should follow the more general rule that evidence of general reputation should be confined to those traits which are in issue and should bear some reference and relation to the nature of the charge. (*People* v. *Haydon,* 18 Cal.App. 543 [123 P. 1102, 1114] ; *People* v. *Jefferson, supra.*)

Lastly, defendant argues that the verdict of the jury does not support the judgment. It is conceded that the information was sufficient to charge either assault with a deadly weapon with intent to commit murder or assault with a deadly weapon. The jury found the defendant guilty of the first and the trial judge found him guilty of the second offense. This procedure is permitted by section 1181 of the Penal Code. (See *People* v. *Brown, supra.*)

The judgment and order are affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied January 6, 1948, and appellant's petition for a hearing by the Supreme Court was denied January 21, 1948.