[Crim. No. 1113.   Fourth Dist.   June 26, 1956.]

THE  PEOPLE,  Respondent,  v.  ROY  HERSCHELL
CHESTER, Appellant.

Dale C. Miller, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Robert S. Rose, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant was charged with violating section 217 of the Penal Code (assault with intent to commit murder) upon the person of Jewell Forney. It was also charged in the information that he had been twice previously convicted of a felony (forgery and assault with a deadly weapon—three counts) and served terms of imprisonment therefor. Defendant admitted the prior convictions. A

jury found him guilty of the offense charged. Defendant and Jewell Forney began living together in December, 1954. There is a conflict in the evidence as to whether the relationship was meretricious or of a lawful marriage union. They lived at the home of defendant's mother in Coachella. Jewell was employed as a waitress. Defendant was on parole and was employed at an ice plant. Jewell threatened to leave defendant on several occasions. On Saturday, before the incident here involved, Jewell moved out of defendant's mother's home and took residence in a near-by cabin. She claims she left the restaurant where she was employed about June 5th and went in a taxi to near-by Thermal to obtain employment and to get away from defendant whose parole did not permit him to visit there. She was interviewed by the restaurateur and about that time defendant appeared on the scene in his car and told her she was not going to work there. She indicated she intended to do so. As she started to leave the premises defendant grabbed her and an argument ensued. Defendant struck her and as she reached the bottom steps he struck her again and knocked her prone to the ground and under his parked car. She was unconscious. Defendant stepped over her body, got into the car and started to back it up to run over her. The restaurateur pulled her from under the car just before the wheels reached her. This testimony was corroborated by the restaurateur. There was testimony that she had previously been seen in the company with one Scrabble, who was employed by a firm across the street from where defendant worked. Scrabble claimed that Jewell told him she was not married. There is also evidence that defendant had previously threatened to kill Jewell and Scrabble. He told her that if Scrabble took her to work any more he was going to get his brother's gun and kill both of them. On June 18th, Scrabble overheard defendant say ''he was going to get the party that was going with her.'' That day defendant followed Scrabble all over town in his car. Scrabble testified he had picked Jewell up in his car on two occasions to take her to her place of employment. The prosecution produced a witness who was with defendant, in defendant's home where his brother also lived just a few days before this and defendant showed him an unloaded German Luger gun which he brought out of a dresser drawer. Defendant admitted possession of the gun but claimed he did not show it to the witness; that the witness saw it, asked

about its ownership, and defendant stated it belonged to some other person. Three days before this altercation defendant left his place of employment which was at the rear of the ice plant, in violation of his employer's order, and was seen in front of the plant on several occasions looking across the street where Scrabble was employed. He was told by his employer to return to the rear of the establishment. On Monday, June 20, Jewell, after working her shift at the Coachella restaurant, returned to her cabin which she had padlocked, and discovered that all of her personal belongings had been removed. Accompanied by an officer she went to the home of defendant's mother and there demanded of defendant her clothing and he stated that "You are not getting them." He released them when he found an officer was with her. On June 21, the date of the alleged crime, Jewell worked at the cafe until 4 p. m. She went to her cabin, changed her clothes, returned to the restaurant and there she and another girl met Scrabble and they took a ride in his car. He returned her to her cabin about 12:30 a. m. She stated they had a few beers but were not intoxicated. She looked to see if defendant's car was parked near by but did not see it. ■ She unlocked the door, turned on the light in the middle of the room and then observed defendant standing behind her. She ordered him to leave and he refused. She threatened to leave and he said "I will see that you don't go any place." According to her testimony he struck her in the mouth with his fist and knocked her back against the wall. She said she heard dishes rattling or breaking and then defendant jumped on her stomach with his feet and she felt him cutting her legs and knees with some sharp object, green in color, and then he "stabbed her in the back," on top of the head and in the eye. After regaining consciousness she found she was bleeding profusely and finally crawled to the near-by oil station. The proprietor noticed her sitting there covered with blood and dressed in a blouse and shorts. She was removed to the hospital and her wounds were treated by a doctor, who testified she suffered 18 lacerations, two on each leg, one above the left breast, one in the left part of her neck, one over the jugular vein, and one above the eye; that 10 of the lacerations required suture and penetrated through the skin down to the muscles or bone that was underlying the wounds. He testified that in his opinion the wounds were inflicted by a semi-sharp instrument in a straight line with no marked, jagged edges; and that the bruises could

have been caused from falling or a kick or a blunt object. Her upper denture plate was broken. Defendant left the cabin before she gained consciousness and fled to St. Louis, where he was apprehended. Large parcels of blood-stained green and white broken glass dishes were found where she had been lying on the floor.

His story, on the witness stand, was that they were married, but he had reason to believe it was a nullity. He furnished a certified photostatic copy of an application for a marriage license issued in Arizona, apparently signed by defendant and one "Julie Madair" on January 12, 1955. A copy of Jewell's handwriting was received in evidence. Jewell testified she had gone by the name of "Jewel Adair" but did not remember of ever signing such an application or that any marriage ceremony was performed, and if this did happen she must have been under the influence of liquor. Defendant denied the assault upon the prosecutrix. He admitted being in the cabin when she returned that night, but claimed that she was intoxicated; that she fell down and he picked her up and after some discussion Jewell grabbed the knife and cut his arm and then he slapped her; that after he washed and wrapped his arm, he left and drove that night to Arizona where he stopped and had the wound dressed and told the doctor he had cut it changing a tire. He denied he had followed Scrabble on any occasion, and denied knowing Jewell was going with anyone else. He denied the assault on Jewell on June 5, two weeks before this occasion. He told conflicting stories to the investigating officers prior to the trial, and the officers' notes of one of the stories were received in evidence at defendant's request.

It is first claimed that the evidence is insufficient to sustain the verdict mainly because there was no showing of preconceived intent to commit murder. From the above recitation of the evidence, without further elaboration, it is clear that it fully supports the finding of the jury. (*People* v. *Martinez*, 17 Cal.App. 579 [120 P. 786]; *People* v. *Bradley*, 71 Cal. App.2d 114 [162 P.2d 38].)

It is next argued that the court erred in admitting evidence of the previous assault upon the prosecutrix when she was struck and subsequently dragged from under his car. The claim is that such offense was not relevant to show any common scheme or plan, and not a part of the res gestae.

Evidence of other crimes may be admitted when it will

help to disclose motive, intent, premeditation, guilty knowledge, malice or a common plan or scheme. (*People* v. *Albertson*, 23 Cal.2d 550, 576 [145 P.2d 7].) █ An element of the offense charged was the specific intent to take the life of the prosecutrix, and evidence of defendant's previous assaults upon the victim's person, within a reasonable period of time, is admissible for this purpose. Its materiality and relevancy to the facts here in issue are unquestioned. (*People* v. *Mize*, 80 Cal. 41 [22 P. 80] ; *People* v. *Tucker*, 104 Cal. 440 [83 P. 195] ; *People* v. *Bradley*, *supra*; *People* v. *Bolton*, 215 Cal. 12 [8 P.2d 116] ; *People* v. *Peete*, 28 Cal.2d 306 [169 P.2d 924], and cases cited therein.)

█ The same claim is made as to the testimony respecting the possession of the gun by defendant. It is argued that this testimony inflamed the jurors into believing that defendant was a desperate and despicable character. The testimony respecting the gun was incidental to the other testimony of the witness. The evidence shows that defendant, a few days before this occurrence, did threaten to kill both Scrabble and the prosecutrix with a gun, and followed Scrabble with the possible preconceived idea of doing it in some fashion. The fact that he was in possession of a gun, by which means it would naturally be expected to be accomplished, might well bear on the question of the intent of the defendant to take the life of the prosecutrix and show some preparation for its commission. The great bulk of this testimony was admitted before defendant objected to it. No motion to strike it was made. No prejudicial error resulted. (*People* v. *Scalamiero*, 143 Cal. 343, 345 [76 P. 1098] ; *People* v. *Hutchings*, 56 Cal.App. 397 [205 P. 480].)

█ Next, it is argued that although defendant did not request such an instruction, it was the duty of the trial court, on its own motion, to give an instruction that "evidence of the oral admission of defendant should be received with caution," citing *People* v. *Bemis*, 33 Cal.2d 395 [202 P.2d 82] ; and *People* v. *Deloney*, 41 Cal.2d 832 [264 P.2d 532].

The factual backgrounds of the cited cases are dissimilar, and in those cases, to connect the defendant with the commission of the crime, the prosecutor relied mainly upon the oral admission of the defendant. In the instant case the claimed admissions of defendant were admitted into evidence for the main purpose of impeaching his testimony and did not amount to a confession or admission of fact not otherwise established by the evidence. There was abundant additional

evidence connecting the defendant with the commission of the crime. Counsel for plaintiff placed in evidence the prosecution witness' notes from which he testified concerning the claimed admissions. No prejudicial error resulted. (*People* v. *Riley,* 35 Cal.2d 279, 286 [217 P.2d 625].)

Defendant criticizes the court's given instruction to the effect that in every crime or public offense there must exist a union or joint operation of act and intent, and to constitute criminal intent it "is merely necessary that a person intend to do an act which, if committed, will constitute a crime. When a person intentionally does that which the law declares to be a crime, such person is acting with criminal intent even though he may not know that such act is unlawful and even though there be no bad motive."

It is claimed that this instruction has the effect of a presumption that the mere doing of the act was sufficient to find criminal intent, citing such authority as *People* v. *Snyder,* 15 Cal.2d 706 [104 P.2d 638] ; and *People* v. *Wong,* 83 Cal. App.2d 60 [187 P.2d 828]. This instruction has been held to be erroneous where a specific intent is involved. (*People* v. *Zerillo,* 36 Cal.2d 222 [223 P.2d 223].) It was there concluded that the jury could not have been misled where the other given instructions sufficiently qualified it. The additional instructions here given clearly indicated that before the jury could convict the defendant of the crime charged, one of the necessary elements is "the existence in the mind of the perpetrator of the specific intent to commit murder and, unless such intent so exists that crime is not committed." And further that "if the jury should find that he committed the assault but that he did not do so with a specific, preconceived intent to kill, the defendant may be found guilty only of the lesser offense," and that "In the crime of assault with intent to commit murder, there must exist in the mind of the perpetrator the specific, preconceived intent to kill a human being, and a person may not be convicted of such an offense if that specific intent is not established by the evidence." We conclude that prejudicial error did not result in the giving of the erroneous instruction. (*People* v. *Zerillo, supra.*)

Defendant next cites as prejudicial misconduct a statement made by the prosecutor in his opening statement to the jury to the effect that the moral background of the prosecutrix should not keep the jury from believing that she was made of flesh and blood and holds life as dear as anyone else.

This statement was not an unreasonable deduction to be drawn from the evidence. The proper rule is that in opening statements it is the duty of counsel to refrain from referring to facts which he cannot or will not be permitted to prove. (*People* v. *Planagan,* 65 Cal.App.2d 371, 406-407 [150 P.2d 927].) No exception was taken to the remark. It does not appear that prejudicial error resulted. (*People* v. *Gray,* 52 Cal.App.2d 620 [127 P.2d 72].)

■■ Lastly, defendant claims that the trial court erred in refusing to grant his motion for new trial based on claimed newly discovered evidence. Defendant did not appeal from the order denying the motion for new trial but only from the judgment. On an appeal solely from the judgment, he is precluded from urging this ground for a reversal. (Pen. Code, § 1237; *People* v. *Ingersoll,* 21 Cal.App. 763 [132 P. 1052].) However, the order denying the motion for new trial on this ground is sustainable. Counsel for defendant, at the hearing on the motion, made some showing to the effect that after his final argument to the jury, some woman from the audience unknown to him approached him and stated she knew the prosecutrix and that the prosecutrix had told her that defendant had attacked her with a *knife.* This showing, if properly and timely made, would not have been sufficient grounds to reverse the order denying the new trial since, at most, it would only constitute possible impeachment of the prosecutrix's testimony in this respect. At the time the remark was claimed to have been made she may well have believed that such was the case. It does not appear to us that a different verdict would have resulted had the evidence been produced. (*People* v. *Yankee,* 79 Cal.App.2d 431, 437 [179 P.2d 582] ; *People* v. *Mandell,* 48 Cal.App.2d 806 [120 P.2d 921].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.