[Crim. No. 3063. Third Dist. Sept. 29, 1960.]

THE PEOPLE, Respondent, v. ERNEST WALDRON, Appellant.

Harry A. Ackley, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and Raymond M. Momboisse, Deputy Attorneys General, for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment of conviction based upon a jury verdict finding appellant guilty of robbery of the first degree.

On September 29, 1959, a Mr. Jack Humphrey was drinking beer in a bar in Stockton. Appellant entered, engaged him in conversation and they drank together. Appellant asked Humphrey if he would be interested in a woman and was told that he would not. They went to a second bar where appellant sent a woman to Humphrey who rejected her. Humphrey then left and went to a third bar. Later he went out to the street where he was met by appellant and a companion. There appellant repeated his offer concerning a woman. Humphrey again refused, whereupon appellant grabbed him and in the scuffle took his wallet. There were witnesses who said that during this encounter appellant struck Humphrey so hard he was driven back against a car parked against the curb; that during the encounter appellant drew a knife from his pocket, pinned Humphrey's left arm behind him, and stabbed him. There was testimony also that appellant took Humphrey's wallet from his pocket and threw it to his companion, remarking, "Here it is. Get away from me." After getting the wallet appellant's companion fled. On being stabbed, Humphrey fell to the ground. When he attempted to arise appellant kicked him down again. The police arrived. Appellant put the knife in his pocket and yelled, "Search me, I've not got a knife, I haven't got a wallet. You are against me because I'm colored and you're all white." Appellant then ran and as he fled again drew his knife. He was pursued by police and arrested. The knife was removed from his pocket and when removed the blade was opened. There was fresh human blood on it. Humphrey's wallet and its contents, approximating sixty to seventy dollars in money, were never returned to him.

Appellant testified at the trial and, while admitting that he had met Humphrey at the bar earlier in the evening, asserted it was Humphrey who opened the conversation concerning a woman. He said that later the two men got into an argument

on that subject; that Humphrey hit appellant, whereupon a fight ensued. He denied stabbing Humphrey, but on cross-examination said he might have done so since he had a knife and, when he fought, he fought to win.

Appellant contends the verdict is not supported by the evidence. In arguing this contention he asserts that Humphrey's testimony showed the crime to be that of theft, followed by assault rather than the crime of robbery. Appellant states: "According to witness Jack Humphrey, . . . no blow was struck nor any violence involved until *after* the property was taken thus yielding larceny and subsequent assault and not a taking by force or fear as required in the crime of robbery." Little need be said concerning this claim of error, since it is apparent from what we have heretofore recited that the jury could have believed the evidence of witness bystanders who testified that only after Humphrey had been beaten and stabbed did the appellant take his wallet from his pocket.

Appellant next contends that the trial court erred in permitting Humphrey to display his wound to the jury. While we find no merit in this contention, it is unnecessary to discuss it because no objection was made to the display at the trial. The failure to object constitutes a waiver and the claim of error cannot now be raised on appeal. (*People* v. *Jones,* 52 Cal.2d 636, 646 [343 P.2d 577].)

Appellant next contends that the court committed prejudicial error in its instructions on the subject of intent. The court instructed that: "Where a person voluntarily commits an act which, under the law, is punishable as a crime, the law implies that the act knowingly done was committed with criminal intent, . . ." The court also told the jury that: "In the case of certain crimes, it is necessary that in addition to the intended act which characterizes the offense, the act must be accompanied by a specific or particular intent without which such a crime may not be committed. Thus in the crime of Robbery a necessary element is the existence in the mind of the perpetrator of the specific intent to steal personal property of another, and unless such intent so exists that crime is not committed."

Respondent acknowledges that error was committed. The subject is well treated in *People* v. *Snyder,* 15 Cal.2d 706 [104 P.2d 639], wherein it is pointed out that even though a specific instruction on intent is given nevertheless it is open to the jury to base a finding of specific intent upon the presumed intent warranted by the general instruction. Quoting

from *People* v. *Maciel*, 71 Cal.App. 213 [234 P. 877], the court in the Snyder case stated, at page 710:

". . . This matter is discussed in the Maciel case, *supra*, wherein it is declared that 'The vice of the instruction was not cured by what was said in the other parts of the charge to the effect that the defendant could not be convicted of the crime of assault with a deadly weapon with an intent to commit murder unless the jury believed beyond a reasonable doubt that the assault was committed with such intent to murder. The force of the objectionable instruction was left untouched, and its meaning was left unchanged and unimpaired. It and the other instructions, when considered together, amounted to no more than this: "To warrant the jurors in convicting the defendant of the crime of assault with a deadly weapon with intent to commit murder they must believe beyond a reasonable doubt that the defendant assaulted Rosas with a deadly weapon, with malice aforethought and with the intention of taking the life of Rosas; but if the evidence shows that defendant unlawfully discharged a loaded pistol at Rosas, that act in itself will be sufficient ground for the jury to infer the existence of such malice aforethought and intent to kill." ' "

However, it has often been held that the error under discussion was not prejudicial and did not require a reversal. (See *People* v. *Barkoff*, 163 Cal.App.2d 639, 648 [329 P.2d 1005]; *People* v. *Chester*, 142 Cal.App.2d 567, 573 [298 P.2d 695]; *People* v. *Kuykendall*, 134 Cal.App.2d 642, 645 [285 P.2d 996]; *People* v. *Warren*, 175 Cal.App.2d 233, 240 [346 P.2d 64]; *People* v. *Seay*, 179 Cal.App.2d 362, 363 [3 Cal. Rptr. 769]; *People* v. *Brown*, 182 Cal.App.2d 533, 535-536 [6 Cal.Rptr. 38].)

In this case we have concluded from a review of the entire record that the case is not one where it can be said to have been probable that a different result would have been arrived at by the jury had the general intent instruction not been given. Contrary to appellant's argument, we do not consider this case to have been close. On the contrary, the evidence of appellant's guilt was strong and convincing. We hold, therefore, that although error was committed the judgment may not be reversed on account thereof.

 Appellant next contends that the deputy district attorney was guilty of prejudicial misconduct during the trial. Once again we feel compelled to say that, although we have examined these assignments of prejudicial misconduct and find no merit therein, we deem it futile to discuss them in

detail since in every instance there was no objection made at the time of trial. Speaking generally, ''the misconduct claimed to be prejudicial to defendant's rights will not furnish grounds sufficient to justify the granting of a new trial or the reversal of the judgment'' where objection is not made at the trial. (*People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556].)

For the reasons given, the judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 23, 1960.