[Crim. No. 12632.   Second Dist., Div. One.   Dec. 26, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES HAWKINS, Defendant and Appellant.

Sheldon M. Jaffe, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard H. Cooper, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of robbery.

In an information filed in Los Angeles on December 23, 1965, defendant was charged in count I with codefendants Arthur Bacon and Ernest Walters with robbing Glenn Wilder of a revolver and money in excess of $34,775 on November 26, 1965; in count II with murdering Ronald W. Davis on the date in question, in count III with assault with a deadly weapon with intent to commit murder and in count IV with another and different assault with a deadly weapon. Counts

II, III and IV, insofar as this appeal is concerned, were disposed of other than by verdict. Trial by jury was had and defendant was found guilty of robbery in the first degree as charged in count I. Defendant was sentenced to the state prison.

A résumé of some of the facts is as follows: On November 26, 1966, two employees of Armored Transport Incorporated, namely, Jerome Jacobson and Glenn Wilder, while in the course of their employment, drove an armored truck in the vicinity of the Midway Shopping Center in Los Angeles. Jacobson was the driver of the truck and Wilder occupied that portion of the truck in the rear which is divided from the driver's compartment. At the shopping center Wilder got out of the truck and went into a drug store in the area. Jacobson then proceeded westerly with the truck to Scott's Hamburger Stand which was the next stop for the truck in the conduct of business. Jacobson saw defendant Hawkins with the two codefendants at the stand and noticed that codefendant Bacon had a newspaper folded in his hand in a fashion which appeared out of the normal way of holding a newspaper. The defendants were talking with each other. Jacobson thereupon locked the compartment which separated the driver's compartment from the passenger compartment, removed a 30-30 caliber rifle from a stand and activated it. Jacobson opened a small gun port and placed the barrel of the rifle through the porthole.

In about two minutes Wilder returned to the truck and Jacobson activated the release which opened the door to the end that Wilder could enter the passenger compartment of the truck. Wilder started to enter at which time defendant and codefendant Bacon displaying firearms came from behind him and said, ''This is a holdup.'' Hawkins directed Jacobson to drop the rifle, which by then was pointed at Hawkins, saying, ''Drop that gun or I'm going to shoot him,'' meaning Wilder. Jacobson dropped the rifle and Hawkins entered the money-carrying compartment of the truck, pushed his shotgun through a port which he had opened and pointed and ''covered'' Jacobson with such shotgun. Jacobson grabbed at the barrel to stop Hawkins from pointing the shotgun at him. One of the codefendants, who had a gun pointed at Wilder, stated that if Jacobson did not release his hold on the shotgun of Hawkins, they were going to shoot Wilder. Jacobson released the shotgun hold.

The defendants unloaded 10 or 12 sacks of money from the truck onto the sidewalk. Wilder was pummeled in the truck

and a few more sacks of money were thrown out of the truck. Hawkins, with the barrel of his shotgun on Wilder's chest, forced Wilder down into a wheel well, then jumped from the truck and slammed the door closed. Jacobson opened up a port and called to the defendants to stop and fired a shot which appeared to strike codefendant Bacon in the buttock or leg area. The defendants then ran carrying with them some of the money in the bags. Some of the bags were left on the sidewalk and were picked up by Jacobson.

The defendants went to a parked white Ford Falcon automobile which was fairly close to the truck and headed away from the truck. They started putting the money bags into the car and Jacobson fired more shots. There appeared to be a fourth man who drove the car at that time. Jacobson fired the 30-30 caliber rifle at about the same time Wilder fired a shot from a 12 gauge shotgun. Instantly thereafter the rear window of the car exploded. The car moved a little to the left and came to rest against another car. Hawkins and Bacon got out of the car and started running westerly through the parking lot. The truck was equipped with red lights and a siren. Jacobson, with the intention of attempting to follow Hawkins and Bacon with the armored truck, started the truck and turned on the siren. As they passed the Falcon car they observed that a door thereto was open and they saw some of the money bags as well as defendant Walters on the floor of the car. Walters jumped out of the car and started to run in a southeasterly direction back toward where the armored truck had been stopped at the time the money was taken from it. Jacobson followed Walters in the armored truck and shortly Wilder got out of the truck, overtook Walters and placed him in custody. Walters was returned to the Falcon car area until the police arrived. At this time the driver of the Falcon car was slumped over. The police were given a description of Hawkins and Bacon and within a matter of minutes the latter two were in custody.

A witness, Reynolds, testified that he was making a delivery to a store in the neighborhood and heard a volley of shots and then heard an unfamiliar siren. He saw Hawkins and Bacon running toward him, followed by the truck through the parking lot. Hawkins had a shotgun and fired it in the direction of a Dodge car which was parked close by. The windshield of the Dodge car, which at the time of the shot was occupied by a Mr. Singer, was shattered and Singer stepped out with his face bleeding. Hawkins and Bacon continued west on Venice

Boulevard with Reynolds following them until the latter attracted the attention of a policeman who took up the chase of Hawkins and Bacon.

A witness, Connell, ran an automobile body shop in the area. He heard the shooting, saw a man running with a sawed-off shotgun and called the police. A witness, Victor, operated an amusement park in a shopping center and saw two men run through the place, one with blood on his face. One of the men, Hawkins, had a sawed-off shotgun and indicated by word that if anyone came into the place, they would kill an employee. The two defendants went out the back door.

A witness, Altman, a telephone company employee was working about a block from the shopping center and as he was parking his truck, Hawkins, his face bloody, put a shotgun into Altman's side. Hawkins wore a white coat which was bloody. Altman knocked the gun down and ran across the street at which time he heard a shot but continued running. As he turned into a yard, he heard another shot and then heard pellets hitting the trees under which he was at the time. There was no objection to the testimony.

Officer Salvino arrested Hawkins and Bacon about 10:35 a.m. There were no weapons on defendants at the time of the arrest, but the officer saw a shotgun about three or four feet from where he first observed defendants. Hawkins was splattered with blood and Bacon was bleeding from the left leg.

Officer Seret saw Singer and the blood on his face and identified a picture as depicting Singer's appearance at or about the time of the offense. There was no objection to this testimony.

Needless to say, Hawkins and Bacon did not testify.

■ Appellant Hawkins now asserts that the testimony with reference to the events subsequent to the taking of the money out of the truck are totally unrelated to the robbery and the admission of such testimony constituted prejudicial error.

The record discloses that timely objections were not made at the trial. (*People* v. *Waldron,* 185 Cal.App.2d 43 [7 Cal. Rptr. 916] ; *Bates* v. *Newman,* 121 Cal.App.2d 800 [264 P.2d 197].)

In any event, the record is clear that Hawkins was in the course of attempting to escape and to avoid capture during the occasions in question. It was all part of one connected and continuing occurrence. A more clear example of consciousness

of guilt could hardly be presented. (See *People* v. *Moody,* 93 Cal.App.2d 66 [208 P.2d 692].)

Appellant insists that the evidence showed the commission of crimes other than the robbery and, indeed, the evidence did so show. But that does not preclude the testimony from being received. In *People* v. *Peete,* 28 Cal.2d 306, 314-315 [169 P.2d 924], it is stated: ". . . It is settled in this state, however, that except when it shows merely criminal disposition [citations], evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. 'The general tests of the admissibility of evidence in a criminal case are: . . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' [Citations.] "

Furthermore, robbery includes the robbers' attempt to escape with the loot, which is just as important in the commission of the crime as gaining possession of the money in the first instance. In other words, the escape of the robbers with the loot is a part of the robbery itself. (See *People* v. *Anderson,* 64 Cal.2d 633, 638 [51 Cal.Rptr. 238, 414 P.2d 366]; *People* v. *Ketchel,* 59 Cal.2d 503, 523 [30 Cal.Rptr. 538, 381 P.2d 394]; *People* v. *Kendrick,* 56 Cal.2d 71, 90 [14 Cal. Rptr. 13, 363 P.2d 13]; *People* v. *Phillips,* 201 Cal.App.2d 383, 385-386 [19 Cal.Rptr. 839]; *People* v. *Reade,* 197 Cal. App.2d 509, 512 [17 Cal.Rptr. 328].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.